People of the State of Illinois, Defendant in Error, v. Edward Martin, Plaintiff in Error.

Gen. No. 50,100.

First District, Third Division.
July 1, 1965.
Rehearing denied July 22, 1965.

William R. McNair, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Defendant was convicted of an attempt to rob and was sentenced to a term of four to seven years. Attempt is now established by statute as a distinct crime, and the offense here is designated in the pleadings and briefs as "attempt robbery." Section 8–4 Illinois Criminal Code (Ill Rev Stats c 38 § 8–4 (1963).)

The principal issue in this case, first raised on appeal, is that the crime was not adequately described in the indictment. Other issues are that the judge had a preformed opinion, and that the evidence is insufficient to support the conviction.

About 1:00 a. m. on June 2, 1962, five members of the Chicago Police Task Force Undercover Unit were on duty in the vicinity of 47th Street and Cottage Grove Avenue, in Chicago, Illinois. They were all dressed in ordinary street clothes. Two of them were riding in an unmarked gray car and the other three were singly walking east on 47th Street toward Cottage Grove Avenue. Officer Dan Antzoulatos had the front place and was walking east on the south side of 47th Street. Juan Gomez was a few feet behind him, and Officer

99

Charles Gilmore was walking east on the north side of the street, but keeping watch on Officer Antzoulatos, the lead man. Officers Neary and Dolan were riding in the unmarked car, but also keeping watch on Antzoulatos.

At 47th Street and Cottage Grove Avenue, the defendant walked past Gomez toward Antzoulatos. The latter testified that when he was near to or in front of 805 East 47th Street, the defendant put his right hand around his neck, began choking him, put his left hand into his (Antzoulatos') left rear pocket, and said "Give me the money." Antzoulatos broke the man's hold and identified himself as a police officer, whereupon the alleged assailant attempted to run away. Antzoulatos struck him, and by that time had obtained assistance from the other officers, who closed in on the scene and subdued the defendant. The other officers corroborated Antzoulatos as to seeing the defendant come up behind him, put his arm around the latter's neck, and his left hand in the left rear pocket.

■ Defendant testified he thought Officer Antzoulatos was assailing his (defendant's) former girl friend, that he came up behind the officer, tapped him on the shoulder, and that the next thing he knew, the officer had attacked him. Defendant denied asking for money and denied attempting to rob the officer.

The pertinent part of the indictment is as follows:

> ". . . on the 2nd day of June, 1962 at and within said County (Cook) Edward Martin committed the offense of attempt, in that he, with the intent to commit the offense of robbery, attempted to take the property of Dan Antzoulatos by threatening the imminent use of force, contrary to the Statute, and against the peace and dignity of the same People of the State of Illinois."

100

The purpose of the constitutional guarantee of the right of the accused to demand the nature and cause of the charge against him, as provided by article II, section 9, of the Illinois Constitution, is to secure to the accused such specific declaration of the offense as will enable him fully to prepare for his defense and to plead judgment in bar of subsequent prosecution for the same offense. People v. Kessler, 48 Ill App2d 177, 198 NE2d 733; People v. Williams, 30 Ill2d 125, 196 NE2d 483.

██ The indictment or information charging an offense defined by the statute should be as fully descriptive of the offense as the language of the statute and should allege the substantial elements of the offense defined in the statute. People v. Martin, 314 Ill 110, 145 NE 395; People v. Barnes; 314 Ill 140, 145 NE 391; People v. Powell, 353 Ill 582, 187 NE2d 419. The defendant cannot lawfully be convicted of a crime not charged in the indictment. People v. Fore, 384 Ill 455, 51 NE2d 548; People v. Brown, 312 Ill 63, 143 NE 440. In the case of People v. Cohen, 303 Ill 523, 135 NE 731, the court said, at p 525:

> "Great niceties and strictness of pleading should only be countenanced and supported when it is apparent that the defendant may be surprised on the trial, or unable to meet the charge or make preparations for his defense for want of greater certainty or particularity. (Cannady v. People, 17 Ill 158.) The criminal law is fast outgrowing those technicalities which grew up when the punishment for crime was inhuman and when it was necessary for the courts to resort to technicalities to prevent injustice from being done. Those times have passed, for criminal law is no longer harsh or inhuman, and it is fortunate for the safety of life and

101

property that technicalities to a great extent have lost their hold."

Rigid requirements with respect to indictments and other technical requirements in criminal procedure come down to us from the days when many crimes now considered petty were subject to the penalty of death. As early as the Seventeenth Century, Sir Matthew Hale (Lord Chief Justice of England) made the following comment:

> "That in favour of life great strictnesses have been in all times required in points of indictments, and the truth is, that it is grown to be a blemish and inconvenience in the law, and the administration thereof; more offenders escape by the over easy ear given to exceptions in indictments, than by their own innocence, and many times gross murders, burglaries, robberies, and other heinous and crying offenses, escape by these unseemly niceties to the reproach of the law, to the shame of the government, and to the encouragement of villany, and to the dishonour of God. And it were very fit, that by some law this over-grown curiosity and nicety were reformed, which is now become the disease of the law, and will I fear in time grow mortal without some timely remedy." (Vol 2, Hale's Pleas of the Crown, 1st Ed, 1847.)

■■ A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a *substantial step* toward the commission of that offense. Ill Rev Stats, c 38, § 8–4(a) (1963). A person commits robbery when he takes property *from the person or presence* of another by the use of force or by threatening the imminent use of force. Ill Rev Stats, c 38, § 18–1(a) (1963). Two essential elements are thus involved in the crime of at-

tempt robbery, to wit: the element of a "substantial step" toward commission of the offense, and (2) the attempt to take by the use of force or threat of force from the person or presence of another.

■ The language of the indictment is that defendant attempted to take the property of Antzoulatos by threatening the use of force, and while it does not spell out that the threat was against Antzoulatos (the word "threatening" not being followed by the words "him with"), the juxtaposition of the charge of threat with the words charging intent to commit robbery and to take the property of Antzoulatos make clear that this was what was meant. This is the only natural and reasonable reading of the language.

So read, the indictment states both elements of the crime—(1) the attempt to take the property from the person of Antzoulatos, and (2) the substantial step in that direction, that is, the threat of the imminent use of force against Antzoulatos. It describes the offense with sufficient particularity to enable the defendant fully to prepare his defense and sustain a plea of judgment in bar of any further prosecution for the same offense—the tests generally prescribed.

If a higher degree of particularity was desired by defendant, such as an averment in haec verba that the threat was made against Antzoulatos, this could have been obtained by a motion made before trial.

■ Defendant also argues that the trial judge had a preformed opinion about the case which was prejudicial to the right of the defendant and thereby denied him a fair and impartial trial. After the verdict had been returned and the jury polled, the court made the following statement before sentencing:

> "I want to say, to start with, that I think this defendant had an excellent lawyer who did an excellent job. I, myself, at no time felt that there was

any evidence that would justify any finding of not guilty, but I must say, I listened with admiration to counsel's defense of the man. There can be no question in this case that he had a very able defense."

No instances of unfairness or impartiality are pointed out, and apparently none occurred. If the judge had such a preformed opinion, there is nothing in the record which reveals any communication of it to the jury in any way. The case was competently and fairly tried. The cases cited by defendant are not in point, as they involved remarks of the trial judge in the presence of the jury.

██ Defendant also contends that he was not convicted beyond a reasonable doubt. His argument on that point may be summarized as follows: Only Officer Antzoulatos testified that some one said "Give me the money," although Officer Gomez was only 15 feet behind him and did not so testify; that Antzoulatos' testimony was not a positive identification of the defendant as the person who said "Give me the money"; that assuming such a statement was made, there were other people in the area who could have made it; that there was testimony showing the well-lighted condition of the area as well as the number of people present when the incident occurred, and that no rational person would under such circumstances attack another. That the defendant is the man who was struggling with Antzoulatos is not questioned. That there might have been another such event taking place and that some one else said "Give me the money" is sheer fancy.

██ Defendant argues that it is not plausible that he would have attempted to rob anybody under such circumstances, especially since Antzoulatos was wear-

ing ordinary street clothes, thereby negating any theory that he appeared to be a man of affluence or one who would have a sizeable sum of money on his person. Antzoulatos' testimony was that he was wearing a sport jacket, a sport shirt, charcoal brown slacks and brown shoes. This appears to be the description of a well-dressed man.

The defendant was proved guilty beyond a reasonable doubt.

Judgment affirmed.

DEMPSEY, P. J. and SULLIVAN, J., concur.