People of the State of Illinois, Plaintiff-Appellee, v. John F. Dillon, a/k/a Edward McCormick, Defendant-Appellant.

Gen. No. 51,153.

First District, First Division.

March 18, 1968.

Julius Lucius Echeles and Jo Anne F. Wolfson, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Arthur Zimmerman, and Alan Gersh, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

A complaint was filed in the Third Municipal District in which the complainant, Mrs. Estelle Ellison, as agent for Chesterfield Interiors, ". . . states that John F. Dillon, a/k/a Edward McCormick, a/k/a E. Leonard has, on or about June 26, 1965 . . . committed the offense of theft of labor and services in that he knowingly obtained by deception the use of services and property upon which complainant had a lien and claim for services and materials furnished, which said property exceeds in value, the sum of $150.00, in violation of Chapter 38 Section 16–3 Illinois Revised Statute . . ." The defendant waived

■■■■■■

a trial by jury, and was found by a magistrate guilty as charged in the complaint. The court sentenced him to eight months in the County Jail.

On appeal, the defendant contends:

(1) that the complaint does not set out a violation of the criminal laws;

(2) that the complaint, such as it is, charges a felony; therefore, the magistrate had no jurisdiction to try the case and render ultimate judgment;

(3) insufficient evidence was introduced upon which the magistrate could make a finding of guilty;

(4) that the magistrate ordered defendant to testify in violation of his constitutional right to remain silent; and

(5) that the evidence disclosed that the state was a willing vehicle in the collection of delinquent accounts for complainant.

We summarize the evidence. Estelle Ellison, Secretary-Treasurer for Chesterfield Interiors, Inc., testified that on June 8, 1965, she received a phone call from a woman, representing herself to be Mrs. Dillon, and that Mrs. Dillon requested that someone be sent out to her home to estimate the cost of reupholstering three chairs and a sofa. Robert Ellison, President of Chesterfield Interiors, testified that he went out to 630 Maple Court in Mount Prospect, Illinois, to make the estimate previously referred to. He met a man at the door who stated that he was John Dillon. The witness then identified the defendant as the man who had claimed to be Dillon. Ellison further testified that the defendant told him to wait until his wife got home. When the defendant's wife arrived, Ellison showed her sample fabrics and they agreed on a price for the work. Ellison then made out an order for the work which he stated was signed by the defendant with

the name of John Dillon. An order signed "J. Dillon," which set forth certain work to be performed on a sofa and three chairs by Chesterfield Interiors, was then introduced in evidence. Ellison testified that he received a $25 deposit from the defendant and arranged to have the furniture picked up the following morning. After the work on the furniture had been completed, delivery was arranged for Saturday, June 26.

Ronald McHugh, a driver for McHugh Van Lines, testified that on June 26, 1965, he delivered a sofa and three chairs to 630 Maple Court in Mount Prospect, and was met at the door by the defendant, who said to bring the furniture inside. McHugh further testified that he then told the defendant that an amount of $400 C.O.D. was due, and that the defendant responded by stating, "Mr. Dillon is out and he didn't expect delivery until around 2 o'clock." The defendant represented himself to McHugh as the brother-in-law of Mr. Dillon. McHugh stated that he then called the office and was told to get the defendant's signature on the delivery receipt. According to McHugh, the defendant signed the receipt; and a delivery receipt of Chesterfield Interiors, stating that the furniture had been accepted for "Mr. Dillon" and signed by one "E. Leonard" was introduced in evidence.

Estelle Ellison also testified to the fact that on June 26th, she received a phone call from a man who claimed to be Mr. Dillon, and Dillon, at that time, complained that the work done on the furniture was unsatisfactory in some respects. Robert Ellison testified that on the evening of June 26, he went out again to the defendant's home. The defendant complained about the sofa frame, and Ellison offered to send a man out the next day to fix it; Ellison also offered to take $20 off of the price, and asked the defendant to pay him the balance. Ellison testified that the defendant said no, and stated that he would pay the man when the work was finished. He and the defendant agreed that the "finisher" would come out the

next evening, but the defendant was not at home when the man arrived to fix the furniture. Ellison stated that the defendant retained the reupholstered furniture and never made any attempt to pay the total amount due of $463.76.

The defendant took the stand and stated that his name was Edward McCormick, and that he, his wife, his child, and John Dillon, his brother-in-law, all resided together at 630 Maple Court in Mount Prospect. He testified that on June 9, 1965, he and his wife returned home and found his brother-in-law talking with Mr. Ellison. His wife then joined the conversation and he went into another room to talk on the phone. He further testified that the articles of furniture reupholstered by complainant were owned outright by John Dillon. McCormick denied that he talked to Ellison at any time after June 9th; and he also stated that he had neither given the $25 deposit to Ellison nor signed the order for the work. On June 26th, when McHugh came to deliver the furniture, he told him that he wouldn't sign the delivery receipt, and he didn't sign it.

John Dillon testified that he resided with the McCormicks, and that he had lived with them at 630 Maple Court for a little over a year. He further testified that he owned the furniture that had been reupholstered, and that he, and not his brother-in-law, Edward McCormick, had made the deal with Ellison and paid the $25 deposit. Dillon stated that he had not signed the order. Dillon said he called up to complain about the quality of the reupholstery work, and he was at home when the man was supposed to come out to fix the furniture; however, no one showed up. When recalled as a State's witness, Dillon produced his driver's license which showed that he resided at 5853 North Winthrop Avenue in Chicago. He stated, however, on cross-examination, that the aforementioned address was where his mother resided, and although he received his mail there and had his car

156

registered to that address, he travelled two-thirds of the time. When he came to Chicago he said he stayed with the McCormicks.

At the conclusion of the evidence, the court denied the motion to dismiss, which it had previously taken under advisement at the close of the State's case, and found that the defendant had been proven guilty beyond a reasonable doubt.

The defendant contends that the complaint failed to set out a cause of action, and therefore, the court was without jurisdiction to enter judgment, and the conviction is void. He argues that the complaint fails to allege a violation of section 16–3, chapter 38 of the Illinois Revised Statutes (1965) upon which it is based. Section 16–3 provides:

> A person commits theft when he obtains the temporary use of property, labor or services of another which are available only for hire, by means of threat or deception or knowing that such use is without the consent of the person providing the property, labor or services.

The complaint, in the instant case, charged that the defendant obtained knowingly by deception, "the use of services and property upon which complainant had a lien and claim for services and materials furnished." Defendant argues that since the Statute in section 16–3 does not cover a "lien for services" the complaint was fatally defective; and that a "lien for services" cannot be construed to be within the statutory language by implication because the Committee Comments to section 16–3, written by Professor Charles Bowman, state that section 16–3 is a codification of the "temporary use" aspect of certain former sections of the old Criminal Code. He further contends that the absence in the complaint of the statutory language "available only for hire" renders the complaint a further nullity.

 We cannot agree with these points raised by defendant. A complaint need not specifically recite the statutory language on which the charge is based. People v. Pronger, 48 Ill App2d 477, 199 NE2d 239. The function of a complaint is to advise the accused of the nature and cause of the accusation against him so as to enable him fully to prepare his defense and sustain a plea of judgment in bar of any further prosecution for the same offense. People v. Martin, 62 Ill App2d 97, 210 NE2d 587. We conclude that the defendant in the instant case was fully apprised in the complaint of the nature of the offense with which he was charged. The complaint adequately alleges the essential elements of a violation of section 16-3 in charging the defendant with the theft, through knowing deception, of property upon which the complainant had acquired a lien and claim for services. Furthermore, we are of the opinion that by the enactment of section 16-3, the Legislature intended to protect all types of businesses from the unscrupulous practices of prospective customers, and not just those commercial enterprises previously covered in the old Criminal Code as enumerated by Professor Bowman. The plain meaning of the statutory language does not limit its scope to specific businesses, and therefore, we cannot assume legislative intent to be otherwise. Hagen v. City of Rock Island, 18 Ill2d 174, 163 NE2d 495. The absence in the complaint of the statutory phrase "only for hire" does not render it defective, as it is apparent from the face of the complaint that the complainant is a commercial firm with a lien for services performed.

 It is next contended that since the complaint charged the defendant with the commission of a felony offense, the magistrate was without jurisdiction to hold a full-scale trial. Defendant argues that section 16-1, chapter 38 of the Illinois Revised Statutes is applicable to the instant case. That section provides that a person convicted of theft of property from the person, or exceed-

ing $150 in value, shall be imprisoned in the penitentiary for a period of from one to ten years. The defendant reasons that since magistrates have no authority to enter judgment in cases wherein the defendant can be sentenced to terms in the penitentiary exceeding a term of one year, (Ill Rev Stats 1965, c 37, § 624) the conviction in the instant case must be reversed because the magistrate exceeded his authority.

It is clear, however, that the defendant is not charged with the kind of theft set out in section 16-1, but rather he is charged with a violation of section 16-3 which deals with theft of labor or services, and the penalty for which is provided in section 16-3(b). This section provides that a person convicted of a violation of section 16-3 can be imprisoned for a period of no more than a year in a penal institution other than the penitentiary. We conclude, therefore, that the magistrate had jurisdiction to hold trial, enter judgment, and sentence the defendant.

The defendant next contends that insufficient evidence was introduced upon which to make a finding of guilt. The argument is made that "it is nowhere alleged in the complaint that 'Chesterfield Interiors' is a corporation." It is true that the corporate status of Chesterfield Interiors is not alleged in the complaint. However, during the direct examination of Mrs. Ellison, the defendant's counsel stipulated that Chesterfield Interiors is a corporation licensed by the State. Therefore, if there was any error in this regard it was clearly waived by the defendant.

Defendant's next contention is that while the complaint alleged that Chesterfield Interiors had furnished services and materials, the proof demonstrated that another unincorporated entity, Unity Furniture and Upholstery, had performed all of the services on the furniture. We have concluded that the proof supports the allegations of the complaint in this regard. The record reveals that the complainant performed a service

159

for the defendant (picking up the furniture and procuring the materials), and exerted labor at the defendant's request (having the furniture reupholstered while supervising the job). Whether the actual labor on the furniture was performed by Chesterfield Interiors is of no consequence under the facts and circumstances of the instant case.

Finally, in regard to the sufficiency of the evidence, the defendant contends that the verdict of the magistrate is not supported by substantial evidence. In this regard we deem it appropriate to quote from the opinion of the Illinois Supreme Court in People v. Finley, 22 Ill2d 525, 177 NE2d 149, where the court stated at page 529: ". . . where a case is tried by the court without a jury, the determination of the credibility of the witnesses and the weight to be accorded their testimony is committed to the trial judge; and, unless it can be said that the court's judgment is found to rest on doubtful, improbable or unsatisfactory evidence, or clearly insufficient evidence, a reviewing court will not substitute its judgment for that of the court below even though evidence regarding material facts is conflicting and irreconcilable." (Citation omitted.)

At the trial of the instant cause there were many conflicts in the evidence. These conflicts were for the resolution of the magistrate. The magistrate could have found from the evidence that the defendant gave the complainant a false name in ordering the reupholstery work, and also gave a false name to McHugh when he attempted to deliver the sofa and chairs. The magistrate could reasonably have concluded from the foregoing facts that the defendant had never intended to pay for the work he requested of the complainant, and that he was using fictitious names as a means of avoiding payment. The behavior of the defendant was clearly a deceptive activity aimed at obtaining labor and services of

the complainant without paying for them, and was, therefore, within the purview of section 16–3.

It is also urged by the defendant that the magistrate ordered the defendant to testify in violation of his constitutional right to remain silent by stating to defense counsel, after the State had rested its case, "put your man on the stand." We do not feel that the statement by the magistrate compelled the defendant to testify. The defendant was represented by counsel of his own choice. We are satisfied that the comment by the magistrate, while ill-advised, was understood by counsel, coming as it did after the magistrate had reserved ruling on defendant's motion for a directed verdict, to mean that the defense could present any evidence it wished to offer. Defense counsel made no objection to the magistrate's statement, and proceeded to call the witnesses for the defense, voluntarily placing the defendant on the stand. The fact that the magistrate reserved his ruling on the motion for a directed verdict at the close of the State's evidence was not prejudicial to the defendant; counsel for defendant could have rested on his motion for a directed verdict at the close of the State's case, and he didn't have to produce any evidence.

Defendant's final contention, that the State's Attorney acted as a collection agency for Chesterfield Interiors, is without merit. There is no evidence in the record to support this charge.

For the foregoing reasons the judgment is affirmed.

Affirmed.

ADESKO and MURPHY, JJ., concur.