People of the State of Illinois, Plaintiff-Appellee, v. Quillie Horne, Defendant-Appellant.

Gen. No. 52,918.

First District, Third Division.

May 8, 1969.

Cecil A. Partee, of Chicago (William H. Hall, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Howard Levine and James Haddad, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

In a jury trial the defendant was found guilty of attempt to commit murder, aggravated battery and robbery. He was sentenced to serve concurrent terms in the penitentiary of thirteen to eighteen years for attempt to commit murder, five to eight years for aggravated battery and thirteen to eighteen years for robbery. He makes the following points on appeal: (1) that the manner of identi-

fication was improper and invalid, (2) that inflammatory evidence was introduced which was both immaterial and without proper foundation, (3) that the court erred in admitting rebuttal testimony of a witness who remained in the courtroom while defense witnesses were testifying, despite an order excluding witnesses, (4) that the indictment did not aver an essential element of the offense of attempt, to wit: an act constituting a substantial step toward commission of the offense, and (5) that concurrent sentences for attempt to commit murder and aggravated battery were improper. The facts follow.

Shortly after midnight on August 1, 1965, the complaining witness left her job in the Loop (the central business district of Chicago) and went to a restaurant with a fellow employee. An hour later she entered the Dearborn Street Subway at Monroe Street. Shortly after she reached the platform a train pulled in and every one on the platform except herself and one man boarded it. The man approached her, slapped her face, demanded money and threatened to kill her if she did not comply. After she gave him her purse, she heard another train coming and tried to escape, but her assailant shoved her down on a bench. She did not remember anything that happened after that until she awoke in a hospital bed the following morning.

Eugene McFerren testified that he was a policeman and that in response to a radio call, he went to the Monroe Street Subway platform at about 2:00 a. m. on the day in question. When he arrived, he found the victim on a bench and described her condition as follows:

> "She had a badly swollen right eye, her right jaw was swollen, she was bleeding from the nose and mouth, there was blood on her leg, her right blouse was torn, her breast was partially exposed. . . . There was clothing on the platform floor. . . . Female undergarments: a blouse, a brassiere, I should say, and panties, slip, a half slip."

Dr. Walter Daltsch, the treating physician at Cook County Hospital, examined the victim and found her to be in a condition of "semi-shock." He testified that he observed considerable swelling, bruising and bleeding on the nose and mouth, lacerations and tears of the lips and floor of the mouth, loss of teeth and bone in the lower jaw and some bruising of the neck. The nipple of one of her breasts had been bitten and was hanging by a shred of tissue. There were bruises and lacerations around the vagina and the posterior wall of the vagina. He also testified that X rays revealed other serious injuries.

Later the same morning investigating officers discovered defendant's wallet in the same subway station wedged between a soft drink machine and a pillar. It contained a ten-year-old identification card with defendant's picture. The photograph was shown to the victim in the hospital and she identified it as that of her assailant. The police subsequently located and arrested defendant. He was taken to the victim's hospital room where she identified him.

Defendant testified that he had been involved in a daylong drinking bout with friends and relatives. Several of them corroborated that part of his story, but they also testified that they last saw him at the Douglas Park Elevated Station at about 8:00 p. m., or five hours prior to the crime. Defendant further testified that he boarded an elevated train and rode and slept on trains until 2:00 a. m. He admitted that the wallet found on the subway platform was his. He explained that he had fallen asleep in the Jackson Street Subway Station and that when he awoke the wallet was missing. Officer Henry Kaminski testified in rebuttal that defendant told him he did not discover that his wallet was missing until he was on the Logan Square Elevated.

With respect to point (1), defendant contends that at the time the victim first identified him, she was in a state of shock and that the procedure of bringing him

171

alone to her hospital room was suggestive. He further contends that her in-court identification was made nine months after the crime and was therefore unreliable.

■ ■ There is no inflexible requirement that an identification to be admissible must be made out of an arranged lineup, although that is the preferred method when it is practical. People v. Boney, 28 Ill2d 505, 192 NE2d 920; People v. Crenshaw, 15 Ill2d 458, 155 NE2d 599. The means of identification is relevant in that it bears on the weight to be given such evidence. People v. Boney, supra; People v. Mikka, 7 Ill2d 454, 131 NE2d 79.

The validity of the type of hospital room identification used in the instant case was upheld in Stovall v. Denno, 388 US 293 (1966) and People v. Speck, 41 Ill2d 177, 242 NE2d 208. In Stovall the court said (p 302):

> "Faced with the responsibility of identifying the attacker, with the need for immediate action and with the knowledge that Mrs. Behrendt could not visit the jail, the police followed the only feasible procedure and took Stovall to the hospital room. Under these circumstances, the usual police station lineup, which Stovall now argues he should have had, was out of the question."

The court concluded that the fairness of an identification in such cases depends on the totality of the circumstances surrounding it.

■ The victim in the instant case spent two weeks in the hospital recovering from her injuries and was in no condition to attend a lineup. She had ample opportunity to observe her attacker in the well-lighted subway station and she was positive in her identification, both in the hospital and at the trial. She testified on cross-examination that she was sure it was the defendant "because I couldn't forget it. It's just something that sticks. I don't know, it's something about the face that, as soon as you see it, you know right away." It undoubtedly was a ter-

172

rifying and vivid experience for the victim and the jury could well believe her testimony that she could not forget the face of the man who attacked her. The totality of the circumstances surrounding the identification was adequate to establish the identity of the assailant beyond a reasonable doubt.

Defendant's second point is that the court erred in admitting into evidence five female undergarments. The State introduced them after Police Officer McFerren testified that they were on the subway platform near where he found the victim. Defendant contends that this evidence was not relevant to the case and served only to inflame the minds of the jury.

■ Evidence which has a tendency to establish facts in controversy should be admitted and truly competent evidence should not be excluded merely because it might arouse feelings of horror or indignation. People v. Jenko, 410 Ill 478, 102 NE2d 783; People v. Conway, 85 Ill App 2d 165, 228 NE2d 548. The question for determination is whether the evidence was relevant.

■ Defendant contends that the evidence was probative only of issues relevant to sex crimes and that a sex offense was not charged in the instant case. A recent Illinois Supreme Court case is dispositive of that contention. In People v. Bey, 42 Ill2d 139, 246 NE2d 287 (1969), the defendant was charged with burglary and the State introduced evidence that he also sexually attacked the burglary victim. The court held that this evidence was inextricably interwoven with the burglary charge and therefore admissible. In the instant case the torn underclothing found beside the victim was likewise inextricably interwoven with charges against defendant. The evidence was probative of the nature of the attack made on the victim and consequently was relevant to the issues in the case.

Defendant also contends that the undergarments were improperly admitted in evidence because the victim never

173

identified them as belonging to her. Police Officer McFerrin's testimony was that he found the undergarments on the subway platform near the half-naked victim. The logical inference to be drawn is that they belonged to her. Any question with respect thereto was properly one for the jury to consider.

 Defendant's third point is that the court erred in admitting rebuttal testimony of a witness who after testifying remained in the courtroom during part of the trial despite an order excluding witnesses. The opinion of this court in Bumblauskas v. South Suburban Safeway Lines, Inc., 110 Ill App2d 52, — NE2d —, filed April 24, 1969, reviews the law with respect to the exclusionary rule and the discretion of the court with regard to its enforcement. It is not uncommon for witnesses to stay in the courtroom unless one party or the other objects. It is inconvenient to let them leave and then require their return. The law is well settled that after the trial court has granted an order excluding witnesses, it is within the sound discretion of the court to permit a witness to testify in rebuttal, even though that witness was present in the courtroom. People v. Miller, 30 Ill2d 110, 195 NE 2d 694; People v. Chennault, 24 Ill2d 185, 181 NE2d 74; People v. Snell, 74 Ill App2d 12, 219 NE2d 554. In the instant case defense counsel informed the jury in his opening statement that defendant's testimony at the trial would be the same story he told the police when he was arrested. In view of that statement, the State properly assumed there would be no occasion to call the arresting officer to the stand again. Defendant however did not tell the same story on the witness stand and the State called the arresting officer to testify in rebuttal. The court allowed him to testify, but confined his testimony to the rebuttal of such statements made to him by defendant which varied from defendant's testimony. The court did not abuse its discretion in allowing the officer to so testify.

 Defendant's fourth point is that the indictment failed to allege an essential element of the crime of attempt. The Criminal Code provides that one of the essential elements of attempt is that the accused perform an "act which constitutes a substantial step toward the commission" of the attempted offense. Ill Rev Stats, c 38, § 8–4 (1967). The defendant contends that this element was missing in the indictment against him. The indictment in question reads as follows:

"... Quillie Horne committed the offense of attempt in that he, intentionally and knowingly beat with his fists and kicked with feet and attempted to kill [the victim], without lawful justification ...."

It is difficult to imagine how the instant indictment could be more specific. Certainly the allegation that defendant beat the victim with his fists and kicked her with his feet is sufficient to satisfy the statutory requirement that there be a "substantial step" toward the commission of the offense. It is old law that beating with fists and kicking can result in and constitute murder. People v. Swiontek, 391 Ill 618, 63 NE2d 741. The indictment in the instant case is of sufficient particularity to enable the defendant to understand the nature of the charge against him, to enable him to properly prepare his defense and to stand as a prior judgment in the event of a subsequent prosecution for the same offense. People v. Martin, 62 Ill App2d 97, 210 NE2d 587.

 Defendant's final point is that concurrent sentences for aggravated battery and attempt to commit murder were improper. Convictions for crimes arising out of the same conduct are improper even though concurrent sentences are imposed and the conviction of the lesser crime must be reversed. People v. Duszkewycz, 27 Ill2d 257, 189 NE2d 299; People v. Schlenger, 13 Ill2d 63, 147 NE2d 316. In People v. Peery, 81 Ill App2d 372, 225 NE2d 730, the court held that convictions for attempt

to commit murder and aggravated battery arose from the same conduct and reversed the latter conviction. In the instant case the same acts constituted the elements of both crimes and we therefore reverse defendant's conviction for aggravated battery.

We find no other reversible error in the record and defendant's conviction of attempt to commit murder and robbery are accordingly affirmed.

Judgment affirmed in part and reversed in part.

SULLIVAN, P. J. and DEMPSEY, J., concur.