People of the State of Illinois, Plaintiff-Appellee, v.
George Paul Conway, Defendant-Appellant.

Gen. No. 50,948.

First District, Third Division.

July 6, 1967.

James G. Flannery, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Robert Novelle, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a conviction of burglary with intent to commit theft, burglary with intent to commit rape, and attempt rape. A jury found the defendant guilty, rendering a general verdict covering the three counts. After a hearing in aggravation and mitigation the defendant was sentenced to seventy-five to one hundred and fifty years in the penitentiary.

Defendant contends on appeal that: (1) inflammatory evidence, not properly connected with defendant or shown to be relevant, was improperly admitted; (2) assigned counsel did not provide defendant with the legal assistance guaranteed him by the Constitution; (3) the form of the verdict deprived the accused of a fair trial on each count of the indictment, and (4) the seventy-five to one hundred and fifty year sentence was excessive and out of proportion to the offenses.

On May 6, 1965, at approximately 4:00 a. m., someone forcibly and without authority entered the home of the Pullen family in Chicago. Entry was through a pantry window, after the burglar had pried the screen from its frame.

Mrs. Pullen's wallet, containing some money, a driver's license bearing Mrs. Pullen's name, and money from Miss Susan Pullen's purse were taken. The intruder, later identified as defendant Conway, also entered Miss Pullen's bedroom and got upon her bed. She was awakened when he placed a cloth over her face and a knife at her throat. As soon as she awakened he removed the cloth from her face and told her to show him where the money was kept in the house. She claimed to be very weak and suffering from a contagious disease, so as to ward him off.

The attacker then ordered her to lie on her back and to kiss him. She complied under the threat of the knife at her throat. Defendant took the knife from her throat

168

to slit the crotch of her pajamas. He fondled her body and threatened to perform an act of oral copulation. After forcing her to straighten her legs defendant said, "Hold still, hold still, I'm going to fuck you." As he leaned back to unfasten his pants Miss Pullen screamed and began vigorously struggling. During the fracas, she was cut and bruised. However, her efforts succeeded in frightening defendant, and he jumped up and ran.

During the time of the attack, there was a faint light shining into the bedroom and Miss Pullen was able to look directly into the face of her assailant. When defendant jumped up and ran, Miss Pullen chased him, grappling with him. On her way after him she was able to turn on lights in the dining room and kitchen. He turned and faced her in the well-lit kitchen, knocked her down and escaped.

The police were called and told that the assailant was a male Negro, a little under six feet tall, wearing a light brown jacket and dark colored wash pants. Not long afterwards defendant, who matched the description Miss Pullen had given, was picked up by the police. On his person were found Mrs. Pullen's wallet containing a driver's license bearing Mrs. Pullen's name, some money, and a screwdriver.

Defendant was taken to Roseland Hospital where Miss Pullen was being treated for the cuts she had received during her struggle with the assailant. The victim identified Conway as her assailant. She testified that she then told the officers she recognized Conway by his eyes and nose, and, when he began to scream, his voice. She said she was sure he was the man who attacked her.

■■ Defendant first contends that the court erred in admitting inflammatory evidence not properly connected with defendant or shown to be relevant. Those items are the pajamas worn by the victim the night of the attack, the Pullen's kitchen knife, the screwdriver found on defendant's person at the time of his arrest, and Mrs.

169

Pullen's wallet and the money it contained. Generally, evidence having a natural tendency to establish facts in controversy should be admitted, and truly competent evidence should not be excluded merely because it might arouse feelings of horror or indignation. People v. Jenko, 410 Ill 478, 102 NE2d 783. The question, therefore, is whether the evidence here complained of is relevant and connected to the case and defendant.

■■ Defendant claims that, for proper admission of the pajamas, there must have been a showing that the defendant was the man who attacked Miss Pullen and the one who cut the pajamas. The victim testified that she saw her assailant from a distance of a foot for a period of several minutes with a night light shining in on him from another room. She further stated she saw the man in other rooms while chasing him. She had turned on the lights in two rooms, and saw him then under good lighting conditions. Just a few minutes later she was able to describe the man who attacked her as to his clothing, race, height and hair. This description fit the defendant and, when the victim was face to face with him at the hospital where she was taken for treatment, she immediately identified him. She stated that she was sure he was the man, and that she recognized his eyes, nose and voice. Miss Pullen is a school teacher twenty-two years of age. She was mature in her handling of the terrifying situation confronting her and she gave the police a good description of the man involved. She was positive in her identification, which was soon after the occurrence, so as to leave his image fresh in her mind. We feel this identification is sufficient to come within the rule that the testimony of one witness as to identification, if positive and the witness credible, is sufficient to convict. People v. Ashley, 18 Ill2d 272, 164 NE2d 70; People v. Tunstall, 17 Ill2d 160, 161 NE2d 300. Defendant contends that Miss Pullen's identification of Conway is incredible and that

170

her description prior thereto was sketchy. We feel that this contention is unfounded. The fact is, she did identify the defendant and she testified that he was the one who cut the pajamas. Miss Pullen connected the defendant and the pajamas with the crime by her testimony. It should be noted that the cut clothing is relevant to the element of force of the crime. Therefore the item was properly admitted.

██ ██ The knife introduced was a kitchen utensil, commonly referred to as a butcher knife. Several of Miss Pullen's statements referred to a knife in the possession of the defendant. After he had escaped, she found the knife in her hand. When she put it down, it was, according to her testimony, bloody. The victim had been cut during the struggle with her assailant. This testimony was sufficient to connect the knife to the defendant and to the crime, and was properly admitted into evidence. The Illinois Supreme Court has held that a weapon may be admitted as evidence where there is proof offered connecting it with defendant and with the crime. People v. Ashley, supra.

██ Defendant also claims that it was error to allow into evidence the screwdriver found on defendant's person at the time of his arrest. There was evidence that the burglar had entered the Pullen home by prying a window screen from its frame. People v. Brancztet, 59 Ill App2d 381, 208 NE2d 416, discussed the admissibility of a screwdriver found on a person when he was arrested for burglary, and ruled that the tool, taken after a lawful search, was admissible. Defendant also claims that several remarks made during the trial about the screwdriver and the knife were inflammatory and prejudicial. While we do not decide that the remarks complained of were advisable, our examination of the record shows that they were not grounds for reversal.

██ Defendant also claims that the wallet and money (identified as belonging to Mrs. Pullen) found on Con-

171

way's person when he was arrested do not tend to prove a wrongful taking from the Pullen home. It is well established that the recent, exclusive, and unexplained possession of the fruits of a burglary gives rise to an inference, not only of connection with the crime, but of guilt sufficient to sustain a conviction of that burglary. People v. Pride, 16 Ill2d 82, 156 NE2d 551; People v. Rogers, 16 Ill2d 175, 157 NE2d 28.

Defendant next contends that assigned trial counsel for Conway did not provide him with the legal assistance guaranteed him by the constitution. Although an accused has the right to assistance of effective counsel this does not mean infallible counsel. Incompetency of counsel has been held to be such as renders the defense a farce or amounts to no representation at all. People v. Dean, 31 Ill2d 214, 201 NE2d 405. Defendant claims that his trial counsel failed to make objections to damaging and inflammatory remarks, failed to offer adequate evidence in mitigation and failed to provide any affirmative defense. The first alleged failure refers to decisions that are generally a matter of trial tactics and an error therein will not be grounds for reversal due to incompetency. People v. Wesley, 30 Ill2d 131, 195 NE2d 708. The other alleged failures are those of not presenting evidence favorable to defendant. These matters are beyond the record and we have no way of knowing that such evidence existed. Defense counsel certainly has no duty to make up defenses. People v. Olmstead, 32 Ill2d 306, 205 NE2d 625. The Wesley case, supra, discussed similar alleged errors of trial counsel and ruled that matters pertaining to exercise of judgment are not within a review of competency of counsel. The court there also commented on the evidence of guilt for which there could have been little effective defense. The same statement could be made in the instant case.

172

 Defendant next contends the form of the verdict given deprived the accused of a fair trial on each point of the indictment. The indictment contained three counts: burglary with intent to commit theft, burglary with intent to commit rape, and attempt rape. These three counts all arose out of one occurrence, that of May 6, 1965. The form of the verdict objected to was as follows:

> "We, the Jury, find the defendant, George Paul Conway, guilty in manner and form as charged in the indictment, and we further find the defendant to be about the age of 31 years."

Defendant argues that the jury was thereby given no opportunity to decide guilt or innocence on each count, but was instead required to use an "all or nothing" approach. However, defense trial counsel neither offered another verdict which distinguished among the counts nor objected to the form of the verdict given. Although defendant's appellate counsel suggests that this shows incompetency of trial counsel, we do not agree. Trial counsel may well have felt the general form of the verdict was more favorable to defendant. Rather than deprive the jury of the opportunity of decision on each count it required a finding of guilty of all three for a return of the verdict of guilty "in manner and form as charged in the indictment." In view of the evidence against Conway this may have indeed been a wise decision on the part of trial counsel. At any rate, no objection was made at the trial to the form of verdict given and such questions may not be raised for the first time on appeal. People v. Bruce, 344 Ill App 114, 100 NE2d 350, held that if trial counsel failed to submit a verdict whereby defendant could have been found guilty of a lesser offense and the evidence supports the verdict reached, it was not error for the trial court to fail to give a verdict

173

whereby defendant could have been found guilty of the lesser offense. This reasoning is equally applicable to Conway's case. The evidence presented clearly was sufficient to have found him guilty on all three counts and the jury, in returning a general verdict, accepted that evidence.

■■ Defendant lastly contends that the seventy-five to one hundred and fifty year sentence was excessive and out of proportion to the offenses. Defendant was convicted of serious and violent crimes. Furthermore, at the hearing on aggravation and mitigation, it was shown that he had served sentences for three prior offenses, assault with intent to murder and two burglaries. Less than three months after his release from the last sentence he committed the crimes for which he was sentenced in this case. This is far from a showing of any tendency toward reform. The sentence imposed was within the statutory limits. (Ill Rev Stats 1965, c 38, pars 8.4, 11.1, 19.1.) Where the punishment imposed is within the statutory limits and was authorized by law, it cannot be said to be disproportionate to the nature of the offense, and the reviewing court will not interfere therewith in absence of a clear abuse of the trial court's discretion. People v. Stevenson, 27 Ill App2d 144, 169 NE2d 281.

As was shown in People v. Caldwell, 79 Ill App2d 273, 224 NE2d 634, the sentence is not as onerous as it may appear. In the Caldwell case defendant had been sentenced to a term of fifty to one hundred years. We there pointed out that any minimum term of more than twenty years is treated as a twenty year sentence for the purpose of parole eligibility. (Ill Rev Stats 1965, c 38, par 123-2(a) (3).) With possible time credit for good behavior, the prisoner may become eligible for parole after eleven years and three months. There is then a wide spread between the minimum and maximum sentences that this defendant may serve. As in the Caldwell case, supra, we feel that this flexibility is an aid to the parole

174

board making its determination as provided for in the parole laws of Illinois.

For the reasons expressed above, the judgment and sentence of the trial court are affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.