THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HENRY WILLIS, Defendant-Appellant.

(No. 59432;

First District (3rd Division)—February 6, 1975.

James J. Doherty, Public Defender, of Chicago (Thomas F. Finegan and George L. Lincoln, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Marcia B. Orr, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Henry Willis, was charged with murder. After a jury trial in the circuit court of Cook County he was found guilty of that crime and sentenced to not less than 25 nor more than 50 years. The following points have been considered on appeal: Whether the trial court erred in not suppressing at trial two of defendant's confessions as being factually involuntary and as having been obtained in derogation of his *Miranda* rights; whether the cause must be remanded for a new trial due to the failure of the State to call all material witnesses connected with the taking of the defendant's confessions; and whether the trial court erred in the manner it conducted the *voir dire*.

On February 1, 1972, Dan Lee Shaw was found shot in the face near 5100 North Marine Drive in the City of Chicago. He died soon thereafter without giving a statement. Apparently no one witnessed the crime. A pair of prescription sunglasses not belonging to the deceased was discovered near the body.

On March 9, 1972, defendant was taken into custody. On that date, defendant gave several statements regarding his purported involvement in this crime. Subsequently, defendant filed a pretrial motion to suppress his statements. At the hearing on that motion the following pertinent evidence was adduced.

Defendant testified that while leaving traffic court on March 9, he was met by Officers Greiner and Northen of the Chicago Police Department. They told him they wanted to question him about a murder. As they led him to a police car, they asked him where his glasses were. When defendant answered he had lost them, the officers replied they would show him where. Greiner then drove to the scene of the shooting. When defendant stated that he had lost them on the other side of town,

Officer Northen punched defendant in the chest, threatened him, then punched defendant in the side, slapped him on the head, and hit him in the eye and hand. Defendant was already suffering from a dislocated joint on the hand he was struck. Officer Greiner then remarked that they would take defendant to the sergeant who "don't mess around." Defendant testified that he was in fear of his life.

They proceeded to a room in a police station where defendant was interrogated in the presence of the two officers and a police sergeant. When defendant persisted in his claim of innocence, the sergeant dangled handcuffs before him and threatened him. The sergeant then struck him in the chest. Soon thereafter defendant gave an oral statement, followed by a written one. In short defendant stated that he and his friend Floyd stole a Checker cab and drove to the north side; that they saw a man exit a bus and begin walking; that Floyd jumped out of the cab, apparently causing defendant's sunglasses to fall out; that defendant heard shouting, followed by a shot; and that Floyd ran back to the cab and they drove away. At the hearing defendant denied the truth of the statements, asserting that they had been given out of fear that the police would kill him. He also said that the police wanted him to be a prosecution witness against Floyd. Defendant further testified that the statements were not preceded by an admonishment of his constitutional rights.

Defendant continued that after he had completed the statements at the police station, he was taken to the State's attorney's office. He was led to a room by two police officers. An assistant State's attorney entered and told defendant that he wanted another statement. When defendant asked for a lawyer, the others left the room, and upon their return advised defendant that none was available. The prosecutor insisted upon questioning defendant and eventually obtained a written statement concerning further details of the crime.

On cross-examination, defendant testified that Officer Northen's actions in the police car caused bruises to his knees and swelling around his eye and hand. While he admitted losing a pair of prescription sunglasses with plastic frames, he was unable to say that the glasses found by police were his.

On redirect examination defendant testified that upon leaving the State's attorney's office Officer Northen took him into a tavern for a drink because he felt sick. When defendant arrived at County Jail, he was treated for injuries to his knees, eye, and hand. Defendant testified at an inquest on March 28, 1972, that he had no knowledge of the crime and that his statements were given out of fear that the police were going to kill him.

Defendant then rested on his motion to suppress the statements. Officers Greiner, Northen, McCoy, and an assistant State's attorney testified for the State and all denied striking or abusing the defendant in any way or being in the presence of anyone else who did.

Officer Samuel Greiner testified that defendant agreed to accompany him and his partner in their investigation of the murder. Greiner drove to the scene of the shooting and asked defendant if he remembered the place. When defendant replied negatively, Greiner read the *Miranda* warnings to him. Defendant made no reply. They then proceeded to the station where Greiner questioned defendant. After defendant continued to maintain his innocence, the officer told him to put on a particular pair of sunglasses. Defendant complied, and then said that although the glasses were his he had not shot anyone. Defendant then gave an oral statement. After a recital of the *Miranda* warnings, he gave a written statement. The oral statement commenced about 15 minutes after they had arrived at the station.

Officer Greiner testified that during the interrogation a Sergeant Nickels entered the room and made suggestions to him as to the manner and type of questions to be asked in a voice loud enough for defendant to hear. Greiner noticed that defendant's arms bore needle marks and that the back of defendant's hands were swollen. One of defendant's hands had an "old * * * contusion or brush burn." Greiner did not see any fresh bruises, lacerations, sores, or other swellings on defendant's body. Defendant did not appear to exhibit any symptoms of narcotic withdrawal.

Officer William McCoy testified that sometime after 3 P.M. on the day of the arrest he and Northen took defendant to the State's attorney's office. There, an assistant State's attorney informed defendant of his constitutional rights. Defendant thereupon stated that he did not wish to give a statement without having a lawyer present. The authorities were unable to find an available attorney. The assistant State's attorney then asked defendant if he would give a written statement "relative to being advised of his constitutional rights in the earlier statement." Defendant agreed, although he stated he would not go into any of the details of the crime with a court reporter. A statement was given in the presence of the assistant State's attorney, the two officers, and a court reporter.

Officer McCoy recalled that defendant exhibited the conventional symptoms of detoxification such as a running nose and watery eyes. The only swelling on defendant's body that McCoy observed was on one of defendant's hands, which McCoy stated is indicative of narcotic addiction.

The assistant State's attorney testified that after defendant was brought to his office he advised defendant of his constitutional rights. Defendant replied that he understood his rights. In response to the next inquiry, defendant said he would give a statement regarding the facts of the case. When informed that a court reporter would be present, defendant stated that he would not give a "court reporter's statement" until he obtained a free attorney. The assistant State's attorney then called the public defender's office to locate an attorney and was told that most of them had gone for the day. Defendant then gave a signed statement that he had been advised of his rights prior to giving the earlier written confession to the police.

Officer John Northen testified that during the return trip from the State's attorney's office to the station, he attempted to get further details regarding the facts of the case in a conversation with defendant. During that trip, Northern took defendant into a bar for a glass of wine because defendant complained he felt sick. Officer Northen also observed that defendant appeared lethargic prior to the trip back to the police station.

The State then rested. Sergeant Nickels, who was on its list of witnesses, was not called to testify by the State. The record is silent regarding any objection by defense counsel regarding his absence.

James Stanton testified at the hearing as a rebuttal witness for defendant. On March 10, 1972, he examined defendant in his capacity as receiving room correctional officer in the Cook County Jail. Stanton stated that he vaguely recalled the occasion, but believed the only information he could supply would be based on a sheet he had used to refresh his recollection. Stanton looked at defendant's photo on the history card and remarked that the defendant appeared to have recent scars along his face. There appeared to be a swelling around defendant's eyes and also a scar near his eyes. From his notations on the sheet, Stanton testified that defendant's left hand was sore and that he bore some mark on his face at the time of processing. The mark must have referred to a scar. Stanton also noted on the sheet that defendant was experiencing addiction withdrawal. No complaints as to his physical condition were noted on the sheet.

At the close of the hearing on the motion to suppress statements, the trial court sustained the motion only as it related to anything that was said subsequent to when defendant asked for a lawyer, "namely that which was said in the vehicle returning from 26th and California back to the precinct." The court found defendant had been properly advised of his rights and that no coercion of any type had been exerted upon defendant.

We will first address ourselves to the question of the State's failure to call Sergeant Nickels to testify at the hearing on the motion to suppress the confessions.

Defendant testified at the hearing that while he was questioned at the police station Officers Greiner, Northen, and a police sergeant were in the room. The sergeant was subsequently identified as Sergeant Nickels. Defendant stated that after he had persisted in his claim of innocence Sergeant Nickels dangled handcuffs before him, threatened him, and struck him. Defendant alleged that on account of these acts, together with an earlier assault by one of the officers in the police car, he confessed to a murder he did not commit. Although Officers Greiner and Northen appeared at the hearing and denied these allegations, Sergeant Nickels did not appear and his absence was not explained.

■■■ As far back as *People v. Rogers* (1922), 303 Ill. 578, 136 N.E. 470, the courts in this state have uniformly followed the procedure that when the voluntary nature of a confession is placed in issue, the State must produce all material witnesses connected with the taking of the statement or explain their absence. Only by producing these witnesses can the State discharge its duty of proving the voluntariness of the confession. (*People v. Armstrong* (1972), 51 Ill.2d 471, 282 N.E.2d 712.) Noncompliance with this rule will result in reversal and remandment. *People v. Scott* (1973), 13 Ill.App.3d 620, 301 N.E.2d 118.

■■ The resolution of this issue in the present case is complicated by the failure of defendant to make a specific objection in the trial court to the State's failure to produce Sergeant Nickels. Such a requirement was enacted by the legislature in 1963. (Ill. Rev. Stat. 1965, ch. 38, par. 114—11(d).) Yet, just as the case law prior to this statutory enactment was unclear in demanding a specific objection by the defendant in the trial court (see Committee Comments, Ill. Ann. Stat. ch. 38, par. 114—11 (Smith-Hurd 1970)), so also the few cases dealing with this point since that time strongly suggest that the plaintiff-error doctrine may enable this court in certain instances to recognize the error, notwithstanding the absence of specific objection in the trial court.

In *People v. Harper* (1967), 36 Ill.2d 398, 223 N.E.2d 841, defendant's attorney failed to specifically object at trial to the State's failure to produce an available material witness at a hearing to suppress an allegedly coerced confession. The court declined to enforce the strictures of section 114—11(d) and to consider the issue waived. The court noted that although the State had advised the trial court that it would produce the material witness on the following day, the judge replied that he had heard enough evidence and denied the motion. The supreme court also discussed the long delay in presentment to a judicial officer and the

admitted bleeding of one of the defendants and subsequent lack of medical attention. On the basis of these "peculiar circumstances" the court recognized the error and reversed the conviction and remanded the cause. We do not read *Harper* as transforming the plain error doctrine, presently codified in Supreme Court Rule 615(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 615(a)), into a "peculiar circumstances" doctrine. As long as the facts in a given case suggest possible substantial constitutional infringement, we have the duty as well as the authority to resolve the issue.

■■ In the present case, there is no question that both the defendant and the State considered Sergeant Nickels to be a material witness to the statements obtained at the police station. Defendant's testimony made him an active participant in obtaining the confessions. The police officers who appeared at the hearing, while disclaiming taking part in or observing any brutality upon defendant, acknowledged the sergeant's presence in the interrogation room. The State included Nickels' name on its list of witnesses. From the time of the inquest, defendant consistently maintained that his confessions had been coerced. The police officers confirmed that defendant's hand was swollen, and the County Jail's processing officer testified from his records that defendant's hand was injured and that his face bore an unidentifiable mark. Furthermore, the processing officer's study of defendant's picture taken at the time of processing disclosed what appeared to him to be a swelling around the defendant's eyes. Under all the circumstances, we believe that it was plain and reversible error for the State to fail to produce Sergeant Nickels as a material witness connected with the taking of the statements or else to have explained his absence. Therefore, we recognize the error and reverse the conviction for a new trial.

Since we realize that on remand the trial court may hold the confessions voluntary in the traditional sense, we must also consider defendant's contention that the confessions were obtained in violation of the *Miranda* standards.

The record reveals that it is defendant's position that he gave four inculpatory statements to the police, while the State argues that he only gave three. Nevertheless, it is agreed that he gave two statements, an oral and a written confession at the police station, before he requested a lawyer at the State's attorney's office. Since the trial court suppressed any statement following that request for a lawyer, we need only analyze the facts and law pertaining to the first two statements.

■■ Defendant initially argues that the *Miranda* warnings were never read to him. Defendant's testimony to that effect was contradicted by Officers Greiner and Northen. An examination of the record convinces

us that the finding by the trial court that the admonitions were properly and fully given was not against the manifest weight of the evidence. *People v. Pittman* (1973), 55 Ill.2d 39, 302 N.E.2d 7.

We next must determine if defendant voluntarily and understandingly waived his rights under *Miranda* to permit the admission into evidence of the two statements.

After the police informed defendant of his constitutional rights at the scene of the shooting, Officer Greiner testified that defendant remained silent. He was immediately taken to the police station and gave an oral statement after approximately fifteen minutes of interrogation.

An analysis of the waiver of one's constitutional rights under *Miranda v. Arizona* (1966), 384 U.S. 436, must necessarily commence with that decision. At page 475 the Supreme Court set forth the ground rules for proving waiver:

> "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. * * *
>
> * * * But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. * * *
>
> Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

■■ The record in this case is devoid of any evidence whatsoever to support a showing of waiver prior to defendant's giving his oral confession. To hold to the contrary would run directly against *Miranda.* Since the State has thus failed to meet its heavy burden by this silent record, the oral confession given at the police station must be suppressed at the new trial. *People v. Landgham* (1970), 122 Ill.App.2d 9, 257 N.E.2d 484, *cert. denied* (1971), 402 U.S. 911.

We must next decide whether defendant's written confession which followed the oral one is fatally tainted and must also be suppressed at the new trial.

The record shows that prior to obtaining the written confession defendant was given another recitation of his constitutional rights. After each enumeration of his rights defendant answered, "Yes." He then stated that he understood his rights. After the written confession was

obtained, he read it over and signed it. His rights were spelled out in the written confession. Defendant also stated in this confession that he had graduated from high school while in the Army.

■■ We believe the holding in *People v. Landgham* to be dispositive of this issue. The facts in that case are strikingly similar to those in the present case. There defendant was arrested upon probable cause for the crime of murder. After he was advised of his *Miranda* rights, defendant remained silent. Soon thereafter he gave an oral statement. He was then admonished again of his constitutional rights, which he stated he understood. A written confession followed. This court held that although the silent record could not support a showing of waiver for the oral confession, it satisfied the waiver requirements for the written confession. In maintaining that defendant had not claimed or showed a connection between the two statements, the court distinguished the case of *People v. Raddatz* (1968), 91 Ill.App.2d 425, 235 N.E.2d 353. In *Landgham*, the court also pointed out that no illegal police conduct was used to obtain the oral statements, as was the case in *People v. Riszowski* (1974), 22 Ill.App.3d 741, 318 N.E.2d 10. We adhere to the reasoning of *Landgham*, and hold that the written confession obtained at the police station satisfied all *Miranda* requirements.

■■ In view of our remand, we must also consider defendant's contention that the trial court erred in the conduct of the *voir dire*. Prior to commencing selection of the jury and over objection, the trial court announced that it alone would personally direct questions to the prospective jurors. The prosecution and defense were permitted to submit supplemental questions to the court which, if proper, would be asked the prospective jurors by the judge.

Supreme Court Rule 234 (50 Ill.2d R. 234) reads as follows:

> "Rule 234. Voir Dire Examination of Jurors
>
> The judge shall initiate the *voir dire* examination of jurors by identifying the parties and their respective counsel and briefly outlining the nature of the case. The judge shall then put to the jurors any questions which he thinks necessary, touching their qualifications to serve as jurors in the cause on trial. The parties or their attorneys shall be allowed a reasonable opportunity to supplement such examination, but shall not directly or indirectly examine jurors concerning matters of law or instructions."

A reading of the rule makes it clear that it prohibits a total ban involving direct questioning of the prospective jurors by the parties of their attorneys. (See *People v. Carruthers* (1974), 18 Ill.App.3d 255, 309 N.E. 2d 659.) On remand we direct that the *voir dire* procedure utilized in this case not be repeated.

For the reasons stated, the judgment of the circuit court of Cook County is reversed and the cause remanded for a new trial in accordance with the views expressed in this opinion.

Judgment reversed and remanded.

DEMPSEY and MEJDA, JJ., concur.