THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD E. HILLS, Defendant-Appellant.

Third District    No. 77-398

Opinion filed February 5, 1979.

462

STOUDER, J., dissenting.

Robert Agostinelli and Verlin R. F. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

Carl E. Hawkinson, State's Attorney, of Galesburg (James E. Hinterlong, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Defendant Richard E. Hills appeals from an order of the Circuit Court of Knox County revoking his probation and sentencing him to a term of two to six years in the penitentiary. Four errors assigned by defendant are: (1) that his confession was improperly admitted into evidence; (2) that he was denied effective assistance of counsel; (3) that his sentence was modified illegally eight days after imposition; (4) that the sentence was excessive.

Defendant was originally charged with possession of a controlled substance with intent to deliver after police intercepted a letter in which had been placed .2 grams of a white powder containing a drug known as MDA. The letter had been mailed by defendant to Michael Eades, a prison inmate at Vandalia, Illinois. After defendant pleaded guilty to the charge, he was sentenced to two years probation beginning January 5, 1976. In April of 1977, a petition to revoke defendant's probation was filed in Knox County alleging in count I that defendant committed a burglary of the London Mills Recreation Center on March 10, 1977, and in count II that he committed an attempt burglary of the London Mills Drug Store on March 14, 1977. Charges of burglary and attempt burglary had previously been filed against defendant in Fulton County where both crimes were allegedly committed. On April 12, 1977, the Circuit Court of Knox County appointed the public defender to represent defendant in the revocation proceedings.

At the probation revocation hearing on May 19, the public defender asked for a continuance and stated that he felt he could not adequately prepare a defense because he had not yet discussed the case with defendant. Counsel explained that after his appointment, defendant called to say that private counsel had been retained. When the public defender contacted the named attorney, he learned that private counsel would not represent defendant in Knox County but only in the Fulton County proceedings. By that time defendant was out on bond, and the public defender was unable to reach him to discuss the case. The State objected to the continuance because defendant was negligent in failing to contact the public defender after he knew that private counsel was not available and also because the State's witnesses from Fulton County were present in the courtroom. The court denied the continuance, and both parties then agreed to proceed with testimony from the State's witnesses who were present and to continue the case for the defense to a later date.

The State's witnesses testified that on the morning of March 10, the owners of the London Mills Recreation Center, which included a restaurant and pool hall, discovered that the Center had been broken into during the night and that items having a value of $200 to $250 were missing.

Among the stolen items were several pool cues, some boxes of candy bars, gum and cigarettes, and $90 in change. The thieves had entered by breaking a padlock on the door of an adjoining garage and then breaking through a connecting wooden door into the Center.

Gary Phillips, a criminal investigator with the Illinois State Police, testified that about 2 p.m. on the afternoon of March 14, he talked to defendant in the presence of another State policeman and the Fulton County State's Attorney and obtained a statement from defendant concerning the March 10 burglary at the Recreation Center in London Mills. According to this statement, defendant and two friends had been drinking beer and while driving through London Mills, they decided to break into the Center. One friend had passed out in the back seat of the car, so defendant and the other friend, Melvin Thomas, used a crowbar from the trunk of defendant's car to break the padlock on the garage door and to take the hinges off the connecting door. Once inside the Center, they helped themselves to five or six pool cues, cigarettes, gum and some change, all of which they took to the friend's apartment.

Defense counsel objected to the admission into evidence of defendant's statement on the ground that defendant was "laboring under the difficulty of intoxication," but the court denied the objection. According to previously adduced evidence, the statement was taken some 12 hours after defendant's arrest and thus 12 hours after the use of any intoxicants. Officer Phillips testified that defendant appeared to be sober but very tired at the time he gave the statement.

The State then rested its case as to count I and proceeded to introduce evidence concerning count II of the Revocation petition.

Walter R. Riley testified that about 1 a.m. on the morning of March 14, he was awakened by a loud noise. He got up and looked out the window of his upstairs apartment but saw no one. He heard the noise again so he went downstairs and outdoors where he stood behind a bush and observed a light across the street behind a wooden door between the London Mills Drug Store and Boden's Insurance Agency. Riley called the police, and later saw the policemen bring defendant and another man out from between the two buildings. Upon closer inspection of the premises, he saw a padlock broken off a storeroom door, and one off a basement door, and some wood trim from around a drugstore window on the floor. On cross-examination, defense counsel questioned Riley about a statement he gave to the police at 4:10 a.m. on March 14 in which he said he saw three men run around the drugstore building when he first looked out his window.

A Fulton County deputy sheriff described the arrest of defendant who was discovered crouched in a corner of the walkway separating the drug store from the insurance agency. The deputy said that defendant

"was less than stable," but he did not smell any alcohol although he did find some pipes used for smoking cannabis. He also stated no one was inside the building.

At the close of the State's case the hearing was recessed until June 16, when defendant took the stand to testify in his own behalf as to count II. According to defendant, in the early morning of March 14, after becoming intoxicated while drinking beer with some friends, he and his friend Melvin Thomas were walking in a park in London Mills when a young man about defendant's age, who he did not know, came up to them and asked if they would like to buy some cannabis. After defendant said he had no money, the stranger invited them to try some anyway and took them to the area behind the drugstore where they smoked a pipe. The stranger saw a squad car and ran away, but when defendant and Thomas heard a gunshot, they became frightened and went back between the buildings where they stayed until they were arrested. Defendant denied trying to get into the drugstore, and stated that he was under the influence of alcohol that night.

In closing argument defense counsel stated that the result as to count I was a foregone conclusion but that, as to count II, defendant was telling the truth "because he does not wish to admit to doing something he didn't do having admitted already to something he did do and I am speaking now of Count I."

The trial court ruled that defendant was guilty of violating his probation as to both count I and count II. At the sentencing hearing on July 28, the court imposed a sentence of two to six years in the penitentiary with credit for time in custody. On August 5, all parties again appeared in court at the request of the trial judge for the express purpose of clarifying the record to show that defendant is not to receive credit for the 14 months he spent on probation. Defense counsel objected that this amounted to an illegal increase in defendant's sentence, but the trial judge persisted and called attention to the fact that because of his assignments to other counties, August 5 was the first time he had been able to return to Knox County to clarify the record. This appeal followed.

■■ Defendant first contends that his confession was improperly admitted into evidence because the State did not produce all of the witnesses who were present at its taking. He cites *People v. Armstrong* (1972), 51 Ill. 2d 471, 282 N.E.2d 712, where a conviction was reversed for improper admission of the defendant's confession. In *Armstrong* defendant filed a motion to·suppress his confession, and at the hearing on the motion, defendant testified that his statement was made after he was repeatedly beaten by police while in custody and that he was not advised of his rights. Defendant's testimony was corroborated by several relatives. The State did not call all of the officers listed by defendant as participants in

his arrest and interrogation and did not attempt to explain the absence of some of the officers. The Illinois Supreme Court reversed and restated the general rule that, *when the voluntary nature of a confession is challenged by a motion to suppress,* the State must produce all witnesses to the taking of the confession or must explain their absence. In relying on *Armstrong* and other cases where the issue of voluntariness was raised in the trial court, defendant ignores the rule that any question as to the voluntariness of a confession is waived if defendant does not raise the issue by motion to suppress or by objection at trial. (*People v. Terrell* (1975), 62 Ill. 2d 60, 338 N.E.2d 383; *People v. Richardson* (1st Dist. 1978), 61 Ill. App. 3d 718, 377 N.E.2d 1235; *People v. Lee* (2d Dist. 1976), 41 Ill. App. 3d 502, 354 N.E.2d 543.) Since defendant did not claim in the trial court that his confession was involuntary, the issue cannot be raised for the first time on appeal.

Defendant discusses *People v. Willis* (1st Dist. 1975), 26 Ill. App. 3d 518, 325 N.E.2d 715, in support of the proposition that the State's failure to call all the witnesses to a confession is reversible error whether the defendant objects at trial or not. Aside from the fact that *Willis* was decided before the supreme court's decision to the contrary in *Terrell,* we think it significant that in *Willis* the voluntariness of the confession was raised in the trial court so that the statements which support defendant's position are dicta at most. The same is true of *People v. Bell* (5th Dist. 1977), 50 Ill. App. 3d 82, 365 N.E.2d 203. We believe the principles enunciated by the supreme court in *Terrell* are controlling here. The State need not call as witnesses all of the persons present when a confession is taken unless the defendant places the question of voluntariness at issue in the trial court. Therefore, we find that defendant's confession was properly admitted in this case.

Defendant next argues that he was denied effective assistance of counsel in that the public defender failed to challenge the confession, failed to develop a defense theory to refute count I and virtually conceded defendant's guilt as to count I in closing argument. Defendant does not claim that the court erred in denying his motion for a continuance, although he does contend that counsel lacked adequate preparation for the revocation hearing. Competency of counsel is a factual question and will not be inferred from the fact that trial was commenced shortly after appointment of counsel. (*People v. Gray* (1965), 33 Ill. 2d 349, 211 N.E.2d 369.) Also the parties agreed to a four-week recess to allow defendant time to prepare his defense.

The standard to be applied in determining the competency of appointed trial counsel was stated in *People v. Goerger* (1972), 52 Ill. 2d 403, 288 N.E.2d 416 as follows:

"In order to establish lack of competent representation at trial, it is necessary to demonstrate 'actual incompetence of counsel, as reflected by the manner of carrying out his duties as a trial attorney' which results in substantial prejudice without which the outcome would probably have been different." 52 Ill. 2d 403, 409, 288 N.E.2d 416, 419.

Defendant suggests that we adopt, as a new standard to measure competency of counsel, the standard used by the Seventh Circuit Court of Appeals which is whether counsel's conduct falls short of the expected professional standard of competent counsel. (*United States ex rel. Williams v. Twomey* (7th Cir. 1975), 510 F.2d 634.) The Illinois Supreme Court quite recently rejected the Federal standard in *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677, and we must do the same.

Defendant contends that his trial counsel's closing argument was a "meaningless summation," that he failed to object to introduction of the confession on the obvious ground that not all of material witnesses were present, and that he failed to formulate a "defense theory" as to either count.

■■ After reviewing the record, we find that defendant was competently represented. Defense counsel cross-examined the State's witnesses in an able manner and voiced appropriate objections to inadmissible testimony. Although defendant complains that counsel failed to defend on the burglary charge, there is nothing in the record to indicate defendant's possible innocence or to indicate that defendant's confession was not voluntary. Matters beyond the record cannot be a basis for a reversal, and defense counsel certainly had no duty to manufacture a defense where none existed. (*People v. Conway* (1st Dist. 1967), 85 Ill. App. 2d 165, 228 N.E. 548, *cert. denied* (1968), 393 U.S. 1006, 21 L. Ed. 2d 471, 89 S. Ct. 498.) The mere failure to make an objection is a matter of judgment and does not establish incompetency. "Competency is determined from the totality of counsel's conduct of trial. * * * [E]rrors in judgment on trial strategy do not establish incompetency." (*People v. Murphy* (1978), 72 Ill. 2d 421, 437, 381 N.E.2d 677, 685-86.) The cases relied upon by defendant are not applicable to the case at bar because in those cases, the record contained testimony indicating that the confession might have been coerced while here there is nothing to support an assertion of involuntariness.

As to count II, defendant by his own testimony admitted being intoxicated on March 14 in London Mills; he admitted smoking marijuana that night; and he admitted being in the area behind the drugstore for 30 minutes; but he denied trying to break into the building. This state of facts did not give counsel many options in preparing a defense. Obviously

counsel had to convince the court that defendant was telling the truth in the face of strong circumstantial evidence against him. We cannot fault counsel's strategy.

■■ Using Illinois' two-pronged standard for measuring competency of counsel, we find nothing to indicate defense counsel's actual incompetence in the performance of the duties of a trial attorney and, considering that the State's burden was to prove defendant guilty of violating his probation by a preponderance of the evidence, and not beyond a reasonable doubt, defendant has failed to demonstrate substantial prejudice. We therefore hold that defendant received adequate representation.

The next error assigned is the trial court's order of August 5 specifying that defendant is not to receive credit for the time successfully served on probation. Section 5—6—4(i) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—4(i)) provides that, where probation has been revoked, time served on probation shall be credited against a sentence of imprisonment unless the court orders otherwise. Thus when the trial court first imposed a sentence of two to six years imprisonment without any mention of credit for time on probation, defendant was automatically entitled to 14 months credit. Defendant contends that the court's August 5 action increased his sentence illegally. He cites section 5—8—1(d) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(d)), which provides:

> "The court may reduce or modify, but shall not increase the length of a sentence by order entered not later than 30 days from the date that sentence was imposed. This shall not enlarge the jurisdiction of the court for any other purpose."

■■ Aside from section 5—8—1(d), Illinois courts are bound by the rule that the trial court retains jurisdiction over a judgment for 30 days after it is rendered for purposes of correcting errors except that in criminal cases, the trial court loses jurisdiction when the defendant begins serving his sentence. (*People v. Heil* (1978), 71 Ill. 2d 458, 376 N.E.2d 1002; *People v. Hamel* (1946), 392 Ill. 415, 64 N.E.2d 865.) Where, as here, defendant is still in the county jail awaiting delivery to the penitentiary, the trial court retains the power and jurisdiction to vacate the judgment or to change it in material matters for proper cause shown. (*People v. Watson* (1946), 394 Ill. 177, 68 N.E.2d 265, *cert. denied* (1946), 329 U.S. 769, 91 L. Ed. 662, 67 S. Ct. 130.) Under that rule, the order of the trial court denying defendant credit for probation time would be perfectly proper since defendant had not yet begun to serve his sentence in the penitentiary.

■■ Defendant insists that section 5—8—1(d) restricts the trial court to modifications which do not increase the time to be served, thus changing the rule as set out in *Watson, Hamel* and earlier cases. We do not agree.

We interpret section 5—8—1(d) as giving the trial court the additional jurisdictional power to reduce or modify without increasing a sentence after defendant has begun serving his sentence until 30 days from the date sentence was imposed. We reach this conclusion in order to give effect to the last sentence of section 5—8—1(d) which says: "This shall not enlarge the jurisdiction of the court *for any other purpose.*" (Emphasis added.) This sentence must mean that the preceding sentence was intended to enlarge the jurisdiction of the court for the purpose of reducing or modifying a sentence within 30 days, and the only way jurisdiction could be enlarged would be by eliminating the previous restriction.

■■ Accordingly, we hold that the modification of the trial court's sentencing order was within the jurisdiction of the court and was not erroneous.

■■ Finally defendant contends that the trial court abused its discretion when it imposed an enhanced sentence of two to six years for a Class 3 felony without taking into account defendant's lack of a prior record or the circumstances of the crime. Defendant mentions that the quantity of MDA was small (.2 gram) and that he made no financial profit on the transaction. Considering the potential for serious trouble that could result from mailing drugs to a prison inmate, and considering that defendant's conduct while on probation indicated a minimal potential for rehabilitation, we find no abuse of discretion by the trial court and can see no justification for intervening to reduce the sentence imposed. See *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

For the reasons stated, we affirm the judgment of conviction and sentence entered by the Circuit Court of Knox County.

Affirmed.

ALLOY, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I respectfully disagree with the opinion of my colleagues. I believe the defendant did not receive effective assistance of counsel and should be granted a new trial. I also believe the order of the trial court directing that defendant was not entitled to credit for time served on probation against the sentence is improper because not made at the time sentence was imposed and consequently, defendant is entitled to the credit by operation of the statute.

It is well settled a person accused of a criminal offense is entitled to be represented by counsel and is entitled to the effective assistance of counsel. (*Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792.) What constitutes effective assistance of counsel is a troublesome

question depending as it does on its application in an infinite variety of circumstances. As applied to appointed counsel, as in the instant case, ineffective assistance of counsel is actual incompetence of counsel, as reflected by the manner of carrying out his duties as a trial attorney, which results in substantial prejudice without which the outcome would probably have been different. (*People v. Goerger* (1972), 52 Ill. 2d 403, 288 N.E.2d 416, *People v. Dudley* (1970), 46 Ill. 2d 305, 263 N.E.2d 1.) As applied to privately retained counsel, the court in the recent case of *People v. Murphy* (1978), 72 Ill. 2d 421, 436, 381 N.E.2d 677, 685, approved the standard that " '* * * the court will not reverse a conviction because of the incompetency of counsel unless the representation is of such a low caliber as to amount to no representation at all or reduces the court proceedings to a farce or sham.' " As is pointed out in the special concurring opinion in *Murphy*, there is some question about the propriety of the rationale establishing two standards of effective assistance of counsel depending on whether the attorney is appointed or privately retained. Whether the differences in the standards are merely semantic or have substantive differences, the courts in announcing such standards seem to require a higher standard of competent representation where counsel is appointed than when privately retained.

In *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677, the defendant endeavored to have the court apply the Federal standard of effective assistance of counsel as announced in such cases as *United States ex rel. Williams v. Twomey* (7th Cir. 1975), 510 F.2d 634. According to the *Twomey* case, "[T]he Constitution guarantees a criminal defendant legal assistance which meets a minimum standard of professional representation." (510 F.2d 634, 641.) The court in *Murphy* declined to adopt or approve the Federal standard, but then proceeded to hold the attorney's conduct met both standards. Even though the language of the Federal standard was not approved, I have great difficulty in believing a defendant has received the effective assistance of counsel when such counsel has not exercised a minimum standard of professional representation.

By whatever standard is applicable, the record in this case demonstrates the defendant did not receive effective assistance of his appointed counsel. As the majority points out, the defendant has not claimed on this appeal the trial court erred in denying his motion for a continuance. At the time the motion was presented, I agree the trial court in the exercise of its discretion could properly hold the circumstances did not justify the continuance. In this respect two circumstances are of paramount importance. First, the prosecution had its witnesses in court ready to testify at the time the motion was made. Second, the attorney making the motion was aware of the reasons for seeking a continuance

well in advance of the trial date and no reason appears from the record why his motion could not have been made at a time advantageous to its allowance. Thus, on the date of trial with the prosecutions witnesses in court, the attorney for the first time seeks a continuance because he has been unable to interview his client, engaged in no pretrial discovery or investigation, and is unprepared for trial. It is not the unpreparedness of defendant's counsel which is the gist of what I believe to be the ineffective assistance of counsel, but rather the compounding failure of the attorney to undertake the proper procedure which would have probably secured the needed continuance.

After his continuance was denied, defense counsel had no alternative than to accept the procedure mandated by the trial court, *i.e.*, immediate commencement of the case with defendant permitted to present his defense some four weeks later. To suggest, as does the majority, that this course of procedure was agreed to by the defendant does not seem an appropriate characterization. Absent any preparation before the trial commenced, it was not possible to make a pretrial motion to suppress the oral confession or to know anything of the circumstances surrounding its making. Defense counsel did make an objection relating to this confession, which the majority seems to have disregarded when it observes the issue was waived by the lack of a timely objection. While the objection made during the trial is somewhat incomplete and falls short of a comprehensive motion to suppress the confession, the major problem is that because of defense counsel's lack of preparedness there is an inadequate basis for considering the suppression issue. See *United States v. DeCoster* (D.D.C. 1973), 487 F. 2d 1197.

In summary, I am unable to approve, as does the majority, the level of legal representation which the defendant received in this case. If what the attorney did in this case is sufficient to provide meaningful representation to a defendant, then the right to be represented by competent counsel is but a shell without substance.

This brings me to the sentence issue and my disagreement with the majority of the court which approves the subsequent increase of an earlier imposed legal sentence.

In my opinion the statute means what it says. Section 5—8—1(d) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(d)) allows a trial court 30 days from the date of sentence to reduce, but not to increase, the length of a sentence. I have great difficulty in understanding how this statutory prohibition against increasing the sentence, which is the only statute mentioning the subject, is or can be authority for increasing a sentence. Nor does the majority cite any cases, either before or after enactment of the statute, which have approved the authority of the trial court to increase a legal sentence

once it has been imposed. To construe this statute expressly prohibiting the increase of a sentence as a basis for allowing such an increase fails to accord language its usual and customary meaning, is a tortuous effort at statutory construction, and is illogical.

The majority lays some stress on the portion of the statutory provision which indicates that the jurisdiction of the court is not enlarged for any other purpose. I do not find that this language poses any special problem. This statute was passed in 1973 and it had no antecedent provision of similar import. Prior to the enactment of the statute in 1973, there was no statutory authority for reducing a sentence. Where there is a new statute covering new subject matter, limitation of jurisdiction to the subject matter contained in the new provision is understandable.

An examination of the Council Commentary in Smith-Hurd (Ill. Ann. Stat., ch. 38, par. 1005—8—1(d), Council Commentary, at 461 (Smith-Hurd 1973)) is illuminating. It provides:

> "Subparagraph (d) provides that the court may reduce the length of sentence any time within 30 days after the sentence is imposed. This subparagraph permits the court to reduce the sentence to probation, conditional discharge, periodic imprisonment, or a fine."

As indicated by the Council Commentary, this statute is in accord with statutes from other states including a reference to ABA Sentencing Standards, section 6.1. (ABA Standards, Sentencing Alternatives and Procedures, §6.1 (1968).) Since the standards were approved in 1968, it well may be that they provided the rationale for the enactment of this present statute. The standards in subsection (a) of section 6.1 recommend that a specific period of time be designated in which a sentence may be reduced for good cause shown. The comments to this section emphasize the necessity of good cause and do not approve reduction of sentences in the absence of good cause. Furthermore, subsection (b) specifically announces that under no circumstances are increases in sentences to be permitted. From the comments relating to this subsection, it appears this rule is well settled.

There is nothing in the statute, the Council Commentary or in the ABA Standards which in any way suggests that this statute was adopted by the legislature in response to or with concern for the rules relating to loss of a court's jurisdiction because of the execution of the judgment or the commencement of a sentence. I believe the statute was intended to mean what it said, and it was not enacted with any other intent than that the authority to reduce and the prohibition against increasing sentence should exist for the full 30 days as a matter of legislative policy and not in response to any limitations established by legal precedent or other powers of the court.

I think one of the principal cases relied upon by the majority, *People v. Heil* (1978), 71 Ill. 2d 458, 376 N.E.2d 1002, indicates strongly that the execution of a judgment in a criminal case by commencement of sentence is no longer a viable rule even though it is dicta in the case. In the *Heil* case, the defendant, after hearing, was discharged because he had not received a speedy trial. Admittedly, this judgment was fully executed, and if the execution of judgment rule was appropriate as a bar to the modification of this judgment for good cause within 30 days, then the subsequent modification would have been without effect. The court found no merit in the rule as applied in a criminal case limiting jurisdiction of the court to modify its order to that period prior to the execution of the judgment. In view of the court's observation in the *Heil* case questioning the commencement of sentence rule, I doubt the court would reach the same result as it did in *People v. Hamel* (1946), 392 Ill. 415, 64 N.E.2d 865. The other case referred to by the majority, *People v. Watson* (1946), 394 Ill. 177, 68 N.E.2d 265, merely supports the general rule that the trial court may not modify its judgment more than 30 days after rendition, and it has no reference to what a court can or cannot do within 30 days from imposition of sentence.

In summary, I believe the defendant should have been granted a new trial because of ineffective assistance of counsel, and I also believe the defendant's sentence was improperly increased.