THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNETH SLATEN, Defendant-Appellant.

(No. 11511;

Fourth District—May 16, 1972.

John F. McNichols, of Defender Project, of Springfield, for appellant.

Alvin H. Petitt, State's Attorney, of Jerseyville, (George L. Wittman and Claude J. Davis, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

On July 7, 1966, defendant was indicted for burglary and theft. On February 28, 1967, the defendant entered a plea of guilty to the burglary charge and was admitted to probation for a period of 5 years, the first year to be spent at the Illinois State Farm at Vandalia, Illinois. The theft charge was then dismissed.

On April 22, 1969, a Criminal Complaint was filed which charged

defendant with theft over $150. On May 22, 1969, the People filed a Petition to Revoke Probation, this Petition was based upon the theft described in the Criminal Complaint. On July 11, 1969, defendant's probation was extended for a three year period commencing July 11, 1969, with the first year to be spent at the Illinois State Farm at Vandalia, Illinois.

On December 2, 1970, another Motion to Revoke defendant's probation was filed, alleging that defendant had, on November 26, 1970, stolen an outboard motor of value in excess of $150.

On December 3, 1970, defendant appeared in open court, was handed a copy of the Motion to Revoke and was advised that hearing on the Motion was set for December 22, 1970, at 9:30 A.M. On being advised of his right to counsel, and that the Court would appoint counsel if the defendant was indigent, defendant responded that he had already secured counsel, a Mr. Wiseman.

Defendant's arrangements with Mr. Wiseman apparently having fallen through, he again appeared in open court on December 15, 1970, and requested appointment of counsel. The Court thereupon appointed attorney Phillip Moore. Asked defendant if the appointment of Moore met with his (defendant's) approval and defendant answered "Fine". Moore had previously represented defendant in the proceedings to revoke defendant's probation in 1969.

On December 21st, the defendant again appeared in open court and requested a continuance. The record does not disclose the basis for the request. Defendant's counsel was present, but the request seems to have been that of defendant himself. Counsel made no request. The motion was denied.

When the Motion to Revoke Probation was called for hearing on December 22, 1970, the record shows the following:

"THE COURT: I have been informed by Mr. Moore that you have fired Mr. Moore, is that right, Mr. Slaten?

DEFENDANT: That's right.

THE COURT: We will go ahead and have the hearing, and it will be the Order of the Court that Mr. Moore will be available to you, Mr. Slaten.

If he has any question concerning any legal matters concerning this hearing, you will be available to him, Mr. Moore.

MR. MOORE: I only advise him when he asks questions, is that right?

THE COURT: That's right. Let the record show, Petition to Revoke Probation called for hearing. Present in Court the defendant, *pro se*. Present also, the State's Attorney, Alvin H. Petitt.

Are you ready, Mr. Petitt?
MR. PETITT: We're ready.
THE COURT: Are you ready, Mr. Slaten?
DEFENDANT: Yeah."

The People then introduced evidence which clearly established the theft of the outboard motor. The motor had been taken from a boat owned by one Thomas Schafer, and the theft occurred while the boat was parked near a Conoco gasoline station in Grafton, Illinois. On the night in question, Mr. James Seibert, whose home was next door to the service station, observed defendant and another individual by the name of Beasley in a 1964 Pontiac. He saw Beasley get out of the car and loosen the brackets which attached the motor to the boat. Slaten then got out of the car, after backing it up to the boat. Seibert then switched on his garage light whereupon defendant and Beasley left. Seibert then called the Chief of Police, Wilbur Wallace, who came to the service station and verified that the motor brackets had been loosened and then left. Seibert kept watch on the boat from his home, and later saw defendant and Beasley return a second time. Beasley removed the motor and with defendant's assistance placed it in the car and drove off. At Seibert's direction his wife again called Officer Wallace, told him what had occurred, and the direction in which defendant and Beasley had driven from the scene. Wallace then called Deputy Sheriff Nairn who joined with Wallace and other officers in pursuit of defendant and Beasley, who were shortly apprehended. Defendant was driving, and the outboard motor was in the car. Deputy Nairn testified that defendant told him that he was the owner of the car, but that later title check revealed that Thomas Schaefer, owner of the outboard motor, was the owner of the car.

At the close of the Peoples' evidence the Court inquired of defendant if he desired to take the witness stand in his own behalf and the defendant stated that he would like to. The Court then stated "Since you are not represented by an attorney, you can testify in narrative form. No one will ask you any questions. You can take the stand and tell your story and Mr. Petitt, of course, will be given an opportunity to cross-examine you. Do your understand that?", to which defendant responded in the affirmative. Defendant did take the stand, testified briefly without denying commission of the theft, and was not cross-examined. At the close of all the evidence the Court entered an order revoking defendant's probation, held a brief hearing in aggravation and mitigation and sentenced defendant to an indeterminate term of 10 to 30 years.

Defendant urges that the trial court committed error when it permitted defendant to testify without first advising him of his privilege against

self-incrimination, citing *People v. Jackson*, 23 Ill.2d 263, 178 N.E.2d 310, which held that a confession made by the defendant during a preliminary hearing, when he was unrepresented by counsel, was inadmissible because the defendant had not been advised of his right against self-incrimination. The Court observed that in *People v. Farrell*, 349 Ill. 129, 181 N.E. 703, and in *Powers v. United States*, 223 U.S. 303, 56 L.Ed. 448 the accused were *voluntarily sworn* and gave the testimony in their own behalf in the preliminary hearing. The Court then remarked "Here, by way of contrast, defendant was called and sworn at the behest of the prosecutor who then proceeded to elicit the incriminating admissions from him" (*Jackson, supra*, p. 267). Here defendant was not called by the People, he voluntarily took the stand in his own behalf; he was not cross-examined. The better practice, without question, would have been for the Court to admonish defendant of his right against self incrimination. The excerpt from the record which defendant maintains to be incriminatory is as follows:

"THE DEFENDANT: Well, he said there was only one car up there in the vicinity when I was supposed to been parked when I was supposed to took the engine.

THE COURT: You mean Mr. Seibert?

THE DEFENDANT: Yeah. He said he was lookin' out the window if he seen me, and if I was up there waitin' like he said—but there was another car up there. How come you didn't see that car? I was askin' him a question.

THE COURT: You are supposed to tell me your side of the story, not ask questions from the stand. If there were two cars up there, you can tell me. Is that what you are telling us, that there were two cars?

THE DEFENDANT: I ain't sayin' nothin'.

(A. 16-17)"

This brief and somewhat vague statement does not warrant reversal on the ground urged by defendant. Defendant urges that since he stated "* * * but there was another car up there. How come you didn't see that car?" he incriminated himself. He did not go further into this area, and was not cross-examined. Even assuming this statement to be incriminating, the defendant had on two prior occasions, while cross-examining the Peoples' witnesses, asked question and made statements incorporating the essence of the information he complains about; and we know of no rule which requires that a defendant, who insists on conducting his own cross-examination, must be admonished to be careful how he poses his questions. During defendant's cross-examination of Officer Wallace the record discloses the following questions and answers:

"Q. How many was up there around the Conoco that night when we was supposed to stole this engine? Wasn't there other people up there?

A. Not to my knowledge. Just one car with two subjects in it.

Q. Was there two cars there?

A. One was all I was advised of.

THE COURT: Any other questions?

MR. SLATEN: No."

And the following is an excerpt from defendant's cross-examination of the witness Seibert:

"MR. SLATEN: Yeah. Are you sure you seen a Pontiac?

A. Yes.

Q. What color was it?

A. White and black with primer on it.

MR. SLATEN: That wasn't my car.

THE COURT: Mr. Slaten, you will have an opportunity to present your side of the story. If you have any questions about what he saw, or what he knows—

MR. SLATEN: You sure you didn't see a '54 Chevvie settin' there?

A. No.

Q. You must have awful good eyes.

A. I have 20-20.

MR. SLATEN: You didn't see my car."

It is therefore clear that prior to testifying defendant had placed in the record, during his cross-examination of witnesses the identical information which he here claims to constitute the basis for error.

■■ We have held that the constitutional guarantees attach to post conviction proceedings such as hearings in aggravation and mitigation (*e.g.,* *People v. Hampton* (Ill.App.3rd), and we reiterate that the better practice here would have been for the Court to admonish defendant of his privilege against self-incrimination, and the failure to do so, under circumstances other than those present in this case might have warranted reversal and remandment. Here, however, the incriminatory material was already before the Court, and was clearly not the basis upon which the trial court predicated its finding of violation of the probation order. The evidence of guilt is overwhelming and uncontradicted; and reason should make a contribution here. The lack of admonishment, which could, conceivably, have resulted in defendant's testimonial silence is of such infinitesimal dimension when coupled with the fact that the information had been placed before the Court previously, it simply does not rise to the stature of reversible error. To so hold would spin the yarn too thin.

Meticulous enforcement of the rights guaranteed to defendant is one thing, but it must halt at some point short of absurdity.

■■ Defendant also urges that he was not afforded effective assistance of counsel. The record discloses that this was the result of his own choice. The trial date had been set in open court some three weeks in advance. Two weeks in advance, the defendant advised the court that the attorney of his own choice no longer represented him. The Court then appointed Mr. Moore who had represented defendant before and defendant appeared pleased at the court's selection. During defendant's appearance on December 21st he did not indicate any dissatisfaction with his attorney. It was not until the hour for the trial to commence on the following day that defendant indicated he desired other counsel and there is no showing in the record as to the reasons for the request. After the Court denied the motion for continuance defendant elected to proceed *pro se,* although pursuant to the Court's direction, Moore was present at all times during the hearing and was available had defendant seen fit to consult with him. The refusal of the Court to permit defendant to go through the roster of attorneys until he arrived at a relationship which suited him, plus no statement of his reasons for continuing the search, coupled with the availability of counsel ready, willing and able to assist, is not tantamount to denial of counsel. The reason for lack of assistance by counsel was the conduct of the defendant; it was his choice and he must abide by the results. Hearing in aggravation and mitigation was held immediately after the Court announced its ruling on the Petition to Revoke Probation. Defendant again requested appointment of other counsel, which request was denied by the Court. The record reveals that attorney Moore was present and available to defendant throughout the hearing in aggravation and mitigation, and the remarks of the trial judge indicate that he clearly viewed Moore's appointment as a continuing one. Defendant asserts that he was denied effective assistance of counsel at this juncture of the proceedings. We disagree for the reasons above indicated in relation to defendant's contentions concerning effective assistance of counsel during the hearing on the Petition to Revoke.

■■ The defendant also urges that the sentence imposed upon the 1967 burglary conviction is excessive. Defendant's prior record discloses two prior felony convictions, both were Dyer Act violations, one in 1953 and another in 1961. Defendant was sentenced to 3 years of incarceration on each. As above indicated the theft of the outboard motor constituted defendant's third violation of probation from the burglary offense. We are in agreement that the defendant was not a candidate likely to

respond to further probationary treatment. It is equally clear that the three violations of probation cannot be utilized to enhance the penalty imposed for the original burglary conviction, *People v. Morgan* 55 Ill. App.2d, 157, 204 N.E.2d 314.

"Few tasks are more difficult for a trial judge than the sentencing of a probationer. The decision to sentence always involves the finding that the probationer violated the trust placed in him when he was given the benefits of probation. *The breach of trust, however, cannot overshadow the statutory mandate that the probationer be sentenced for the crime of which he was convicted, not for the acts of delinquency which may or may not justify revocation of probation.* * * * In a probation revocation hearing, two factors are important: first, the nature of the acts which lead to the revocation hearing; second, the nature of the offense of which the probationer was convicted. The first factor is relevant in determining whether probation should be revoked. *The second is relevant to the sentence to be imposed, if probation is revoked.*

*People v. Livingston* 117 Ill.App.2d 189, 192, 254 N.E.2d 64. (Emphasis supplied.)

■■ We note that defendant has previously been incarcerated for two years for the two prior violations of probation. After careful review of this record it appears to us that the severe sentence imposed was an abuse of discretion and not proportionate to the circumstances surrounding its imposition. We affirm defendant's conviction, and the judgment and sentence are modified to provide that the sentence imposed on defendant be confinement in the penitentiary for an indeterminate term of 5 to 15 years.

Judgment modified, and as modified, affirmed.

TRAPP, P. J., and SMITH, J., concur.