THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BRUCE HALL, Defendant-Appellant.

First District (3rd Division)    No. 61865

Opinion filed May 20, 1976.—Modified upon denial of rehearing July 29, 1976.

James R. Streicker and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:
Defendant, Bruce Hall, appeals from a judgment entered after his trial without a jury on a finding of guilty to the charge of murder. He was sentenced to the Illinois Department of Corrections for a term of 18 to 35 years. On appeal defendant contends that he was not proved guilty beyond a reasonable doubt and also that the trial court erred in not holding a hearing to determine the voluntariness of two statements made by defendant after his arrest which were testified to at trial. The pertinent facts follow.
The body of the deceased, Joanie Daniels, was discovered by the

building janitor at approximately 8 a.m. on June 9, 1973, in a hallway of the Clarendon Beach Apartments. Defendant was subsequently arrested and charged with the murder. Prior to trial he filed a written motion to suppress all statements made by him to the police on the basis that he was not informed of his constitutional rights and that the statements were secured through police misrepresentations. Although a hearing was requested in the body of the motion to suppress, neither defendant nor his trial counsel requested a hearing or a ruling on the motion. At trial five witnesses appeared for the State and one appeared for the defendant. Defendant did not testify.

LaJune Daniels, sister of Joanie Daniels, testified that she saw Joanie at a party on the morning of June 9, 1973, and that Joanie had left the party alone at approximately 4:15 a.m.

John Gaines testified that at about 4:30 a.m. on June 9, 1973, he saw Joanie Daniels and the defendant enter the Clarendon Beach Apartments together. Gaines stated that he was drinking beer and smoking marijuana while sitting on an automobile outside the building, and that the two passed within 15 feet of him as they entered the apartment building. He stated that at 4:45 a.m. he went inside and through a back door of the lobby into a hallway where he discovered the body of the deceased. He said that at the time he did not know if she were alive or dead and that he left at once without aiding her because he did not want to become involved.

Richard Hansen, an investigator with the Chicago Police Department, testified that on the morning of June 9, 1973, he went to the Clarendon Beach Apartments to investigate a reported homicide. He found the body in a pool of blood in a hallway off the lobby. She was wearing only a blouse and bra and had a 10-inch laceration on the back of her head; one of her ears had been almost severed; there were scratches on her throat, and her lip had been punctured. Hansen observed a trail of blood from the body up a flight of stairs to the wall opposite Room 112, where the trail of blood ended. Pieces of deceased's belongings were found scattered around the hallway; her slacks and panties were in a service area off the hallway; her purse and keys on a stair landing near Room 112; and in an alcove about 35 feet from her body her cosmetic bag and personal identification were found. A wine bottle was discovered in the alcove and the fingerprints on it were later determined to be those of the defendant. Hansen estimated the distance between Room 112 and where the body was found to be about 175 feet.

Hansen also testified concerning two statements made by defendant after his arrest. Chronogically, the first statement was made at the police station, which Hansen stated was after defendant had been advised of his rights. The second statement was later made when defendant was taken

back to the Clarendon Beach Apartments by the police. In his testimony Hansen initially testified about the second statement made at the Clarendon Beach Apartments to which defendant objected on the basis that it had not been established whether he was in custody at the time or had been properly advised of his constitutional rights. The trial court overruled the objection. Hansen then testified that defendant stated he was in the habit of taking cushions from the lobby at the Clarendon Beach Apartments and sleeping on them in the alcove where the deceased's body was found, and that he had done so on June 9, 1973. He also showed Hansen exactly where he was sleeping the night in question. Hansen testified that the point where defendant said he was sleeping was directly over the place where deceased's cosmetic bag and identification were found. Hansen added that when he went to the building on June 9, 1973, he did not see any cushions in the alcove.

Hansen further testified that following the arrest, defendant said in the first statement at the police station that on the night of June 9 an individual named Sam Bodie approached him on the street and asked defendant to get him a girl. Defendant then met Joanie Daniels and the three went to the Clarendon Beach Apartments together at about 4 a.m. Defendant went to the alcove off the hall to sleep and the other two took the elevator to go to Room 150. He was later awakened by the sound of moaning and found Joanie Daniels nearby in a semi-conscious state, covered with blood. She asked him to help her and said she loved him. Defendant became covered with blood while attempting to aid her. He then left the building and went to Charles Jamison's apartment where Jamison gave him fresh clothing and volunteered to dispose of the clothing which was full of blood. Defendant made no objection to Hansen's testimony concerning his first statement made at the police station.

Barbara Creeman testified that at about 5:30 on the morning of June 9, 1973, she and Charles Jamison were awakened by defendant knocking on her door. Her apartment is five blocks from the Clarendon Beach Apartments. She stated that Jamison admitted defendant into the apartment and helped him to a chair. She noticed that he was wearing a short-sleeved shirt with one sleeve completely torn off, and that the shirt had splashes of blood on it. His pants were covered in blood from the thighs to the ankles. Defendant told them he had helped a girl at the Clarendon Beach Apartments; that she had come running down the stairs screaming "I love you, I love you, help me"; and that she had then collapsed in front of him. He said he tried to pick her up because she was bleeding profusely. Barbara Creeman also noticed that defendant's knuckles were scraped. She further testified that she knew he lived in Room 112 of the Clarendon Beach Apartments with his girlfriend, Nancy Barnes.

Charles Jamison testified substantially the same as Barbara Creeman.

He additionally stated that he took defendant into a common hallway bathroom where he removed his shirt and Jamison noticed fresh scratches on his chest. Defendant bathed and was given fresh clothing, after which he requested some lighter fluid with which to burn his bloody clothes, but Barbara Creeman refused to permit him to do so. Defendant then placed his clothes in a paper bag and disposed of them with the garbage from the kitchen. After some delay he left the apartment.

The prosecution and defense entered into several stipulations. One was that two individuals who occupied Rooms 115 and 116 at the Clarendon Beach Apartments would testify to having heard the screams of a woman at approximately 4:45 a.m. on June 9, 1973. It was also stipulated that the coroner's report listed the cause of death as head injuries and manual strangulation. It was finally stipulated that defendant had 20-200 vision in his right eye and only hand-movement vision in his left eye, and that at a distance of 20 feet he could distinguish human size, shape and height, but not facial characteristics.

Lucius Byrd testified as the only witness for defendant. He was well acquainted with John Gaines, and while playing dice with him at the Courtway Building some time in June 1973, Gaines saw a photograph of the deceased and said "This is the bitch we killed." Previously, however, Officer Richard Hansen had testified that he interviewed Byrd about Gaines' alleged statement and was told that Gaines had made the statement at the Castle Hotel. Hansen testified that the Castle Hotel was torn down four months before the murder in question.

At the conclusion of arguments, the trial court found defendant guilty of murder and sentenced him to the Illinois Department of Corrections for a term of 18 to 35 years.

■■ Defendant first contends that he was not proved guilty beyond a reasonable doubt. He argues that the evidence presented by the prosecution was entirely circumstantial and insufficient to exclude every reasonable hypothesis of his innocence. We disagree. A conviction based upon circumstantial evidence must find support upon facts which are adequate to eliminate every reasonable hypothesis of the accused's innocence. (*People v. Reed* (1974), 23 Ill. App. 3d 686, 320 N.E.2d 249.) Yet, merely because the evidence is circumstantial, the trier of fact is not required to search out potential explanations of the evidence which are compatible with innocence and elevate them to the status of reasonable doubt. (*People v. Arndt* (1972), 50 Ill. 2d 390, 280 N.E.2d 230; *People v. Puckett* (1972), 6 Ill. App. 3d 206, 285 N.E.2d 258.) In the instant case, we believe that the evidence established defendant's guilt beyond a reasonable doubt.

The evidence presented by the prosecution demonstrated that defendant was seen entering the Clarendon Beach Apartments with

deceased. Some 15 minutes later the deceased's body was discovered on the floor of a hallway extending from the lobby of the building. Between the time the two were observed entering the building and the discovery of her body by John Gaines, the sounds of a woman screaming were heard by occupants of rooms close to the one defendant occupied with his girlfriend, Nancy Barnes, according to Barbara Creeman's testimony. A trail of blood was found from the wall opposite defendant's room to the hallway where the body was discovered. A wine bottle bearing defendant's fingerprints was found in the alcove off that hallway. In that same alcove deceased's cosmetic bag and identification were also found. One hour after defendant and deceased were seen entering the Clarendon Beach Apartments together, defendant appeared at Barbara Creeman's apartment in torn and bloodied clothing. His knuckles at that time were scraped and there were fresh scratches on his chest. He expressed a desire to burn his bloody clothing but when Barbara Creeman protested, he merely disposed of the clothing with the garbage. Both Charles Jamison and Barbara Creeman testified that defendant admitted that the blood was that of deceased.

Following his arrest defendant stated at the police station that he had taken the deceased to the Clarendon Beach Apartments; that he had been in the alcove where her cosmetic bag and identification were found; and that the blood on his clothing had come from her body. The evidence presented by the prosecution thus demonstrated that defendant was seen entering the building with the deceased shortly before her murder; that he was in her presence at a point when she was severely injured and bleeding profusely; that about one hour later his clothing was covered with her blood and he himself exhibited signs of having engaged in a recent struggle; and that he attempted to destroy his clothing which might serve as a connection between him and the injuries of the deceased.

In arguing the inadequacy of the prosecution's evidence, defendant points to his own stipulated limitations in eyesight, and attacks the credibility of John Gaines. The record indicates, however, that despite defendant's serious sight limitations, he could have functioned in such a manner as to have committed the offense. Defendant was not totally blind, but could distinguish between human height, shape and size at a distance of 20 feet. Moreover, as indicated by Officer Hansen's testimony concerning their return to the Clarendon Beach Apartments, defendant was familiar with the surroundings and interior of the building and walked without assistance directly to the alcove in the rear. As to the credibility of John Gaines, that question and a judgment of the weight to be afforded his testimony were for the trier of fact to determine. *(People v. Donald* (1963), 29 Ill. 2d 283, 194 N.E.2d 227; *People v. Pointer* (1972), 6 Ill. App. 3d 113, 285 N.E.2d 171.) Gaines' testimony was corroborated in

several instances by other evidence and the stipulations entered into at trial. Defendant's principal attack on the credibility of Gaines relies upon the testimony of Lucius Byrd that after deceased's death he heard Gaines admit his participation in her murder. Yet, Byrd's own credibility was seriously challenged by the testimony of Officer Hansen. We cannot say that the evidence was so lacking as to be insufficient to support the finding of the trial court or that on the basis of this evidence a reasonable hypothesis of defendant's innocence could be constructed.

■■ Defendant next contends that the trial court erred in not holding a hearing to determine the voluntariness of his two oral statements to which Officer Hansen testified at trial. As a general rule, the admissibility of an accused's statement may be challenged by either a pretrial motion or an appropriate objection at trial. *(People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673.) In the instant case, defendant filed a pretrial motion to suppress all statements made to the police subsequent to his arrest. However, he did not bring the motion to the trial court's attention or take any steps to secure a ruling thereon. He therefore cannot rely upon his written motion in whole or in part to support his contention that the trial court erred in failing to hold a hearing. *(People v. Mosley* (1968), 100 Ill. App. 2d 361, 241 N.E.2d 476.) At trial, defendant did object to Hansen's earlier testimony concerning his second statement made when he was returned to the Clarendon Beach Apartments by the police. The basis of that objection was that it had not been established whether defendant was then in custody, and if so, whether he had been properly advised of his constitutional rights. The objection was summarily denied by the trial court. We believe the court erred in admitting testimony about defendant's second statement over objection without conducting a hearing to determine its voluntariness. Defendant's objection to the admission of testimony about that statement was sufficient to require a preliminary hearing to determine its voluntariness. *(People v. Jackson* (1964), 31 Ill. 2d 408, 202 N.E.2d 465.) However, Hansen later testified without objection concerning the details of the first statement that defendant made at the police station. The failure to object to testimony as to the first statement operates as a waiver of any error involved in its admission and precludes consideration of that question on review. *(People v. Scott* (1972), 52 Ill. 2d 432, 288 N.E.2d 478, *cert. denied,* 410 U.S. 941, 35 L. Ed. 2d 607, 93 S. Ct. 1406; *In re Lamb* (1974), 21 Ill. App. 3d 827, 316 N.E.2d 42.) Moreover, there was nothing in Hansen's testimony concerning the statement made at the Clarendon Beach Apartments that was not later brought out at trial with greater amplification in his succeeding testimony concerning the statement made by defendant at the police station.

■■ It cannot be said that the testimony about defendant's statement

at the Clarendon Beach Apartments was of such impact that the finding of the trial court, sitting as trier of fact, would have been different had that testimony not been admitted at trial. In light of Officer Hansen's testimony concerning the statement made by defendant at the police station and the subsequent testimony of Barbara Creeman and Charles Jamison regarding a similar statement defendant made to them on the morning of the murder, we regard the error in not holding an evidentiary hearing on the voluntariness of defendant's second statement, made at the Clarendon Beach Apartments, to be harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *People v. Mosley.*

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McNAMARA and McGLOON, JJ., concur.