THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ELVIS L. BELL, Defendant-Appellant.

Fifth District   No. 76-317

Opinion filed June 24, 1977.

Michael J. Rosborough and Randy E. Blue, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Robert L. Craig, Assistant State's Attorney, and Robert M. Kincaid, law student, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant Elvis L. Bell appeals from an order of the Circuit Court of St. Clair County revoking his probation. He contends that because the only evidence of any violation of the conditions of his probation was an involuntary and improperly admitted confession, the revocation of his probation must be reversed. We agree.

On November 25, 1975, defendant entered a guilty plea to an information charging him with the offense of burglary, and he was

subsequently placed on five years' probation. A petition to revoke probation was filed on February 23, 1976, alleging that he had violated a condition of his probation by committing the offense of theft.

At the hearing on the petition, held March 24, 1976, Norman Collins testified that a Sears Die Hard battery, which he had bought new for $30 to $35 six or eight months earlier, was stolen from his automobile in the early morning hours of February 3, 1976. Sergeant Darryl Raymer of the Caseyville police department testified that he participated in the investigation of the theft of the battery from Collins. He testified that he obtained a statement from defendant after informing him of his *Miranda* rights. Defendant stated that he understood his rights. Raymer said that he did not force defendant to sign the form waiving his rights, nor promise him anything, nor did he see anyone else do so.

On cross-examination of Sergeant Raymer, it was brought out that the last question on the waiver form asked whether defendant wanted to make a statement. This question was answered "No." The sergeant testified that "[a]fter he signed this one here, he sat there for I don't know how long and then he went ahead and made a statement. He talked to the Chief." The sergeant testified that he said nothing to defendant between the time that he answered the question and his subsequent giving of an inculpatory statement. Asked the extent of Chief Donald Paulik's participation in obtaining the statement, Sergeant Raymer said: "Mr. Bell didn't want to give a statement originally and then the Chief talked with him and had Patrolman Lynn of Washington Park to come out and talk with him also." Raymer testified that he was present "99% of the time" that defendant was being questioned by the other officers. Asked if he knew what Patrolman Lynn said to defendant, the sergeant answered: "No, sir, but he didn't promise him anything." Neither Chief Paulik nor Patrolman Lynn were called as witnesses. Defense counsel objected to the introduction of the statement taken from defendant because of these officers' absence, but the objection was overruled and the statement was introduced. In it, defendant confessed that he and two companions stole eight batteries, including the one from Collins' car, and sold them the next day for $40.

Defendant took the stand on his own behalf. He testified that he answered "No" to the question at the end of the waiver form: "Having these rights in mind, do you wish to talk to us now?" After he gave the negative response,

" * * * I was taken back into another room; I suppose an interrogation room and when I went back there a sergeant sat down and wanted to know why I wouldn't fill out a statement and wanted to know if I thought it would help if I didn't fill out one and he asked me several questions and I don't remember all of them

and Mr. Lynn came up, Officer Lynn came to the police station and talked to me for a few minutes and wanted to know if I would fill out the statement and I said I didn't and I don't think Sergeant Raymer was present then.

Q. So it was only Officer Lynn that was present?

A. I believe so because I remember the sergeant stepped out for a phone call and I don't remember if it was when Officer Lynn was there and Officer Lynn told me he wanted me to go ahead and fill one out and I told [him] I really didn't want to really fill one out.

Q. When you say he wanted you to—?

A. He said it would be best for me if I filled it out.

Q. And what did you take that to mean?

A. Well, I had given Officer [Lynn] some information before which he had responded to and I know he made a bust on it and he said I better have some good information.

Q. Did you receive any compensation for giving him this information; not this incident here, but on the prior occasion?

A. Yes sir.

Q. So you expected—well, just give me your expectations of your giving him this information. What did you expect from Officer Lynn if anything?

A. Well, before I had given him some information and he had given me some money for it and I insinuate [sic] that if I had given him this statement he might be able to get the charges dropped. The Caseyville Police Department did say they will be willing to drop charges if I would help them bust a certain person.

Q. These charges here?

A. Yes.

Q. Was this deal presented to you by anyone specifically?

A. The sergeant. He told me, his exact words were he would be willing to drop the charges for Harris Brown."

On cross-examination, the following exchange occurred:

"Q. Why did you give this statement?

A. Because Officer Lynn wanted me to. He insinuated that I would get the charges dropped.

Q. You said Officer Lynn didn't promise you anything, didn't you?

A. No, I am sorry. I meant the sergeant.

Q. So you gave this statement, right?

A. Yes.

Q. And that's your signature that appears on the bottom of these sheets?

A. Yes.

Q. And that statement is true?

A. Is it true?

Q. Yes. You didn't tell them a lie, did you, to get the charges dropped?

A. I don't have to answer that.

Q. Yes you do.

COURT: Do you want to take the Fifth Amendment?

A. Yes sir.

MR. ENGLISH [assistant state's attorney]: Alright, take the Fifth. I have no further questions."

Sergeant Raymer, recalled by defendant, testified that he knew nothing about any promises to defendant that the charges against him would be dropped if he gave police information about another person's criminal activities. Under questioning by the court, Raymer testified that "no deal was ever talked about" in his presence, and that he was out of the room where the statement was taken only two or three times for three or four minutes each time.

Defense counsel renewed his objection to the admission of the statement into evidence on the grounds that all the witnesses to its taking were not present. The assistant state's attorney argued that "defendant by his own admission said Sergeant Raymer was the officer who offered him the deal which he has denied * * *."

Decision on the petition to revoke was held in abeyance pending receipt and consideration of a psychological evaluation of defendant. When the matter came on for decision, on March 30, 1976, the public defender informed the court that defendant's family had retained counsel to represent him in the remainder of the proceedings. However, the court refused to allow retained counsel to enter the proceedings. The court then found that the State had proved that defendant had violated the terms of his probation, and sentenced him to two to six years in the penitentiary on the underlying burglary charge. This appeal followed retained counsel's entry of appearance and denial of his post-trial motion.

On appeal, defendant contends that his confession was involuntary and should not have been admitted into evidence at the hearing because the State failed to call all the material witnesses to its taking. (See *People v. Armstrong*, 51 Ill. 2d 471, 282 N.E.2d 712 (1972), and cases cited therein.) He also contends that the statement was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). Because of our disposition of the former issue, we need not reach the latter.

■■ The requirement that the State produce all material witnesses to an allegedly involuntary confession, or satisfactorily explain their absence, long antedates *Miranda*. The purpose of the requirement, simply

stated, is to safeguard against improperly induced confessions. (*People v. Smith*, 56 Ill. 2d 328, 333, 307 N.E.2d 353, 355 (1974).)

" \* \* \* As was stated in *People v. Wright* (1962), 24 Ill. 2d 88, 92, 'The burden of proving that a confession is voluntary is one which the State must assume when the admissibility of a confession is questioned on the grounds that it was coerced. Only by producing all material witnesses connected with the controverted confession can the State discharge this burden. (*People v. Dale*, 20 Ill. 2d 532.) In an unbroken line of cases originating with *People v. Rogers*, 303 Ill. 578, this court has enforced this rule. [Citing 14 cases.] \* \* \*.'" *People v. Armstrong*, 51 Ill. 2d 471, 476, 282 N.E.2d 712, 715; see also *People v. Delk*, 36 Ill. App. 3d 1027, 345 N.E.2d 197 (5th Dist. 1976).

The State argues that the material-witness rule should not be applied here because there was no written motion to suppress the confession; defendant did not allege or prove physical coercion; his testimony at the hearing was uncorroborated and contrary to that of Sergeant Raymer, and, by his failure to specify it as error in his post-trial motion, he has waived the issue for purposes of appeal.

■■ The absence in the post-trial motion of any specification of error based on the State's failure to produce Chief Paulik and Patrolman Lynn at the hearing is likely attributable to the fact that the motion was filed by an attorney other than the one who represented defendant at the hearing. In any event, we think that application of the waiver rule in this case would not serve the purposes of the rule: to advise the trial court of possible mistakes and give it an opportunity to correct them, and to preclude a defendant from raising as error on appeal something in which he acquiesced without objection throughout the proceedings below. (See *People v. Morgan*, 44 Ill. App. 3d 459, 461, 358 N.E.2d 280, 282 (5th Dist. 1977).) Here, as in *Morgan*, it is manifest that the trial court was well aware of the nature of its alleged mistake, and that defendant did not acquiesce in the absence of the witnesses: defense counsel objected vigorously and specifically to the admission of the confession on two occasions. Also as in *Morgan*, admission of the evidence in question would be very prejudicial to defendant if his claim were well founded: his inculpatory statements to the police were the only evidence adduced to justify revocation of his probation. We could recognize an error such as that alleged here even if defendant had not objected in the trial court. (*People v. Harper*, 36 Ill. 2d 398, 223 N.E.2d 841 (1967); *People v. Willis*, 26 Ill. App. 3d 518, 325 N.E.2d 715 (1st Dist. 1975); Ill. Rev. Stat. 1975, ch. 110A, par. 615(a).) As the court said in *Willis*, "[a]s long as the facts in a given case suggest possible substantial constitutional infringement, we

have the duty as well as the authority to resolve the issue." (26 Ill. App. 3d 518, 525, 325 N.E.2d 715, 720.) We decline, therefore, to apply the waiver rule in the instant case, and will proceed to decide the issue raised on its merits.

■■ We will first dispose of the State's arguments that the instant case is distinguishable from *Armstrong* because there was no allegation of physical coercion, there was no written motion to suppress the confession, and defendant's testimony was uncorroborated and contrary to that of the State's principal witness. It is clear that a confession need not be found to have been obtained through *physical* coercion for it to be held involuntary. Illinois courts have long recognized that offers of leniency are a factor to be considered in determining the voluntariness of a confession. (*People v. Price*, 24 Ill. 2d 46, 179 N.E.2d 685 (1962); *People v. Heide*, 302 Ill. 624, 135 N.E. 77 (1922); *People v. Gunn*, 15 Ill. App. 3d 1050, 305 N.E.2d 598 (1st Dist. 1973).) As this court said recently in *People v. Koesterer*, 44 Ill. App. 3d 468, 469, 470, 358 N.E.2d 295, 297 (5th Dist. 1976), *appeal denied*, 65 Ill. 2d 583 (1977):

"* * * Whether the statement was properly admitted depends on whether the confession was made freely, voluntarily, and without compulsion or inducement or promises of any kind, no matter how slight. [Citations.] 'And, of course, whether the confession was obtained by coercion or improper inducement can be determined only by an examination of all of the attendant circumstances.' *Haynes v.* [*Washington*], 373 U.S. 503, 513, 10 L. Ed. 2d 513, 521, 83 S. Ct. 1336, 1343."

■■ Neither is defendant's failure to make a written motion to suppress his confession determinative. *Jackson v. Denno*, 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (1964), and its progeny have made it clear that a defendant has a constitutional right at some stage of the proceedings against him to object to the use of his confession and to have a fair hearing and a reliable determination upon the issue of voluntariness. Failure to request a hearing before trial does not waive the right to such a determination. (*People v. Strader*, 38 Ill. 2d 93, 230 N.E.2d 569 (1967); *People v. Hall*, 40 Ill. App. 3d 56, 351 N.E.2d 639 (1st Dist. 1976); *People v. Tripkovich*, 6 Ill. App. 3d 37, 284 N.E.2d 323 (1st Dist. 1972).) In *People v. Knox*, 90 Ill. App. 2d 149, 234 N.E.2d 128 (1st Dist. 1967), the appellate court held that the court below erred in denying an oral motion by defendant to determine the voluntariness of certain statements made by him. The State had opposed the motion on the ground, *inter alia*, that defendant had not submitted the motion in writing prior to trial. "[U]pon request," said the court, "the trial court is required to allow a hearing to determine whether or not the statements were voluntary or involuntary." 90 Ill. App. 2d 149, 166, 234 N.E.2d 128, 136; see also *People v. Costa*, 38

Ill. 2d 178, 230 N.E.2d 871 (1967); *People v. Thigpen,* 33 Ill. 2d 595, 213 N.E.2d 534 (1966).

■■ Nor, we think, can the State rely here on the fact that defendant's testimony below was uncorroborated, where it was the State's own failure to call the other witnesses which made either corroboration or refutation of defendant's testimony impossible. The facts that defendant initially did not want to give a statement, but gave one after questioning by Chief Paulik and Patrolman Lynn, are undisputed. Sergeant Raymer's testimony that Lynn promised defendant nothing has, of course, no probative value, as Raymer was not present throughout the interrogation. There can be no doubt as to the materiality of the uncalled witnesses' testimony or the State's failure to explain their absence. Therefore, unless for some reason peculiar to the nature of probation revocation proceedings the rule should not be applied here, it would mandate reversal of the decision of the court below.

■■ We see no reason not to apply the usual rules with respect to confessions challenged as involuntary in the context of a probation revocation proceeding. Although significant dissimilarities do exist between such proceedings and criminal trials (*People v. Dowery,* 62 Ill. 2d 200, 340 N.E.2d 529 (1975)), nevertheless a probationer cannot be deprived of his liberty without being accorded substantial justice. (*People v. Lewis,* 28 Ill. App. 3d 777, 329 N.E.2d 390 (1st Dist. 1975).) The loss of liberty which occurs when probation is revoked is a serious deprivation requiring that the probationer be accorded due process of law. (*Gagnon v. Scarpelli,* 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973).) The State contends that the rationale of *Dowery,* where our supreme court held that the exclusionary rule will ordinarily not be extended to probation revocation proceedings, and that evidence previously suppressed because seized in violation of the fourth amendment can be introduced at a revocation hearing, should be extended to cases such as the instant one, implicating fifth and sixth amendment rights. We cannot agree.

*Stone v. Powell,* 428 U.S. 465, 49 L. Ed. 2d 1067, 96 S. Ct. 3037 (1976) contains the most recent discussion of the exclusionary rule by the United States Supreme Court of which we are aware. There the court characterized the rule as "a judicially created means of effectuating the rights secured by the Fourth Amendment," "not a personal constitutional right." (428 U.S. 465, 482, 486, 49 L. Ed. 2d 1067, 1081, 1083, 96 S. Ct. 3037, 3046, 3048.) The court quoted with approval part of Mr. Justice Black's dissent in *Kaufman v. United States,* 394 U.S. 217, 237, 22 L. Ed. 2d 227, 243, 89 S. Ct. 1068, 1079 (1969):

" 'A claim of illegal search and seizure under the Fourth Amendment is crucially different from many other constitutional

rights; ordinarily the evidence seized can in no way have been rendered untrustworthy by the means of its seizure and indeed often this evidence alone establishes beyond virtually any shadow of a doubt that the defendant is guilty.' 394 U.S., at 237." 428 U.S. 465, 490, 49 L. Ed. 2d 1067, 1085, 96 S. Ct. 3037, 3050; see also Mr. Chief Justice Burger's concurring opinion in *Stone*, 428 U.S. 465, 496, 49 L. Ed. 2d 1067, 1089, 96 S. Ct. 3037, 3053.

Although apparently the question has not been squarely decided, it has been assumed by the courts of this State that the constitutional privilege against compulsory self-incrimination applies in probation revocation proceedings. (See *People v. Hudson*, 34 Ill. App. 3d 94, 95-96, 339 N.E.2d 482, 484 (1st Dist. 1975), and cases cited; see also *People v. Slaten*, 5 Ill. App. 3d 405, 408-10, 283 N.E.2d 12, 15-16 (4th Dist. 1972).) In *People v. Pier*, 51 Ill. 2d 96, 281 N.E.2d 289 (1972), the court held that due process requires that a defendant's admission that he violated his probation must be voluntarily made.

■■ It has been said that the reason for the rule requiring the State to call all material witnesses to an allegedly involuntary confession is to protect the defendant's sixth amendment right to cross-examine his accusers. (*People v. Hoffman*, 32 Ill. App. 3d 785, 336 N.E.2d 209 (4th Dist. 1975).) This right is explicitly stated in section 5—6—4(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—4(c)):

> "The State has the burden of going forward with the evidence [at the hearing on a petition to revoke probation] and proving the violation by the preponderance of the evidence. The evidence shall be presented in open court with the right of confrontation, cross-examination, and representation by counsel."

(See *People v. Barker*, 62 Ill. 2d 57, 338 N.E.2d 385 (1975).) We conclude, therefore, that the material-witness rule does apply to probation revocation proceedings, and that the court below erred in overruling defendant's objections to the admission of his confession into evidence.

For the foregoing reasons, the order of the Circuit Court of St. Clair County revoking defendant's probation is reversed.

Reversed.

EBERSPACHER and G. MORAN, JJ., concur.